Barry Berke, *admitted pro hac vice*
   bberke@gibsondunn.com
Darren LaVerne, *admitted pro hac vice*
   dlaverne@gibsondunn.com
Daniel Ketani, *admitted pro hac vice*
   dketani@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
200 Park Avenue
New York, NY 10166-0193
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Michael D. Celio (SBN 197998)
   mcelio@gibsondunn.com
GIBSON, DUNN & CRUTCHER LLP
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Telephone: (415) 393-8200
Facsimile: (415) 393-8306

*Counsel for Defendant Daniel J. Beck*

*Additional Counsel Listed on Signature Page*

Christopher L. Garcia, *admitted pro hac vice*
   christopher.garcia@lw.com
Raquel Kellert, *admitted pro hac vice*
   raquel.kellert@lw.com
Matthew P. Valenti, *admitted pro hac vice*
   matthew.valenti@lw.com
LATHAM & WATKINS LLP
1271 Avenue of the Americas
New York, NY 10020-1300
Telephone: (212) 906-1200
Facsimile: (212) 751-4864

Alexander Wyman (SBN 295339)
   alex.wyman@lw.com
LATHAM & WATKINS LLP
355 S. Grand Avenue, Suite 100
Los Angeles, CA 90071-1560
Telephone: (213) 485-1234

*Counsel for Defendant Michael Kruse*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

### SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILICON VALLEY BANK,<br><br>        Plaintiff,<br><br>    v.<br><br>GREGORY BECKER, DANIEL BECK, MARC CADIEUX, MICHAEL DESCHENEAUX, MICHAEL KRUSE, LAURA IZURIETA, ERIC BENHAMOU, ROGER DUNBAR, JOEL FRIEDMAN, MARY MILLER, KATE MITCHELL, BEVERLY MATTHEWS, GAREN STAGLIN, ELIZABETH BURR, RICHARD DANIELS, ALISON DAVIS, AND JEFFREY MAGGIONCALDA,<br><br>        Defendants. | CASE NO. 5:25-cv-00569-NW<br><br>**OFFICER DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS THE COMPLAINT**<br><br>The Honorable Noël Wise<br><br>Courtroom:    3 – 5th Floor<br>Hearing Date:  September 10, 2025<br>Hearing Time:  9:00 AM |

## **TABLE OF CONTENTS**

I.    INTRODUCTION ......................................................................................................... 1

II.   FACTUAL BACKGROUND .......................................................................................... 3

      A.    SVB's Board, Regulators, and ALCO Monitored SVB's Balance Sheet Risks ............3

      B.    SVB Invested in Safe Government Securities When Short-Term Interest Rates
            Were Expected to Remain Near Zero for Years to Come ..............................................4

      C.    SVB's Hedges Made SVB Money and Protected Hundreds of Millions of
            Dollars in SVB's Long-Term Profits from Higher Interest Rates ................................6

      D.    SVB Authorized a Small Dividend While in Sound Financial Condition .....................7

      E.    SVB Was in Sound Financial Condition Before It Failed Because of a Sudden,
            Unprecedented Social-Media Fueled Bank Run ...........................................................8

      F.    The FDIC Concocts Claims Against SVB's Directors and Officers as a Post-
            Hoc Rationalization for Keeping $1.93 Billion of SVBFG's Deposits ........................9

III.  ARGUMENT ................................................................................................................ 9

      A.    The Complaint Fails to Give Defendants Fair Notice of the Claims Against
            Them ...........................................................................................................................10

      B.    The Complaint Fails Plausibly to Allege the Officers Breached the Duty of
            Care .............................................................................................................................13

            1.    The FDIC-R's Purported Duty of Care Claims are *Caremark* Duty of
                  Oversight Claims That Fail Because the Officers Acted in Good Faith ...........14

            2.    The Complaint Fails Plausibly to Allege That the Officers Did Not
                  Carefully and Diligently Execute Their Responsibilities................................18

            3.    The Complaint Fails Plausibly to Allege that the Officers Made Any
                  Unreasonable Decisions. ................................................................................20

      C.    The FDIC-R Fails Plausibly to Allege a Breach of the Duty of Loyalty ....................22

      D.    The FDIC-R Fails Plausibly to Allege Losses Caused by the Officers .......................23

IV.   CONCLUSION............................................................................................................ 25

Gibson, Dunn &
Crutcher LLP

1

## TABLE OF AUTHORITIES

2

**Page(s)**

3

**CASES**

4

*AccuImage Diagnostics Corp. v. Terarecon, Inc.*,
   260 F. Supp. 2d 941 (N.D. Cal. 2003) ...................................................................13

5

*Anadarko Petroleum Corp. v. Panhandle Eastern Corp.*,
   545 A.2d 1171 (Del. 1988) ..................................................................................23

6

7

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) .........................................................................10

8

*Asahi Kasei Pharma Corp. v. CoTherix, Inc.*,
   138 Cal. Rptr. 3d 620 (2012) ...............................................................................23

9

10

*Bancroft-Whitney Co. v. Glen*,
   64 Cal. 2d 327 (1966) ..........................................................................................14

11

*Bank of Am., N.A. v. Knight*,
   725 F.3d 815 (7th Cir. 2013)................................................................................13

12

13

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...............................................................................................9

14

*Berg & Berg Enter., LLC v. Boyle*,
   178 Cal. App. 4th 1020 (2009)..............................................................................19

15

16

*Brehm v. Eisner*,
   746 A.2d 244 (Del. 2000) .....................................................................................18

17

*Burns v. HSBC Bank*,
   2013 WL 12136377 (C.D. Cal. Aug. 26, 2013)....................................................24

18

19

*Burt v. Irvine Co.*,
   237 Cal. App. 2d 828 (1965).................................................................................19

20

*In re Caremark Int'l Inc. Derivative Litig.*,
   698 A.2d 959 (Del. Ch. 1996).........................................................................14, 18

21

22

*Castillo v. Seagate Tech., LLC*,
   2016 WL 9280242 (N.D. Cal. Sept. 14, 2016) .....................................................24

23

*In re Citigroup Inc. S'holder Derivative Litig.*,
   964 A.2d 106 (Del. Ch. 2009)..................................................................16, 18, 19

24

*FDIC ex rel. Cnty. Bank v. Hawker*,
   2012 WL 2068773 (E.D. Cal. June 7, 2012)........................................................20

25

26

*Corazon v. Aurora Loan Services, LLC*,
   2011 WL 174009 (N.D. Cal. May 5, 2011) .....................................................10, 11

27

28

ii

Gibson, Dunn &
Crutcher LLP

*Dhoat v. Walia,*
   2024 WL 4804980 (N.D. Cal. Nov. 15, 2024)................................................................25

*Dorman v. Charles Schwab Corp.,*
   2019 WL 580785 (N.D. Cal. Feb. 8, 2019).................................................................24

*EcoHub, LLC v. Recology Inc.,*
   2023 WL 6725632 (N.D. Cal. Oct. 11, 2023)..............................................................12

*FDIC v. Castetter,*
   184 F.3d 1040 (9th Cir. 1999).....................................................................................21

*FDIC v. Ching,*
   2014 WL 3361974 (E.D. Cal. July 8, 2014) ...............................................................22

*FDIC v. Faigin,*
   2013 WL 3389490 (C.D. Cal. July 8, 2013) ...............................................................20

*FDIC v. Van Dellen,*
   2012 WL 4815159 (C.D. Cal. Oct. 5, 2012) ...............................................................20

*FDIC v. Perry,*
   2012 WL 589569 (C.D. Cal. Feb. 21, 2012) ...............................................................21

*FDIC v. Switzer,*
   2014 WL 12696532 (N.D. Cal. Apr. 9, 2014) .............................................................20

*Fishman Haygood Phelps Walmsley Willis & Swanson, L.L.P. v. State Street Corp.,*
   2010 WL 1223777 (D. Mass. 2010).............................................................................25

*Foss on Behalf of Quality Sys. Inc. v. Barbarosh,*
   2018 WL 5276292 (C.D. Cal. July 25, 2018) .........................................................15, 16

*Gagliardi v. TriFoods Int'l, Inc.,*
   683 A.2d 1049 (Del. Ch. 1996)....................................................................................20

*Gauvin v. Trombatore,*
   682 F. Supp. 1067 (N.D. Cal. 1988) ......................................................................10, 13

*In re Gen. Motors Co. Derivative Litig.,*
   2015 WL 3958724 (Del. Ch. June 26, 2015), *aff'd*, 133 A.3d 971 (Del. 2016) ......................16, 17

*Gonzalez v. Planned Parenthood of Los Angeles,*
   759 F.3d 1112 (9th Cir. 2014).......................................................................................9

*Gordon v. Bindra,*
   2014 WL 2533798 (C.D. Cal. June 5, 2014) ...............................................................14

*Hamilton Partners, L.P. v. Englund,*
   11 A.3d 1180 (Del. Ch. 2010).......................................................................................23

*Holly v. Alta Newport Hosp., Inc.,*
   612 F. Supp. 3d 1017 (C.D. Cal. 2020)........................................................................24

Gibson, Dunn &
Crutcher LLP

*IIG Wireless, Inc. v. Yi*,
22 Cal. App. 5th 630 (2018) ............................................................................................22

*In re iPhone Application Litig.*,
2011 WL 4403963 (N.D. Cal. Sept. 20, 2011) ................................................................11

*Jimenez v. 24 Hour Fitness USA, Inc.*,
237 Cal. App. 4th 546 (2015) ..........................................................................................21

*Kanter v. Reed*,
92 Cal. App. 5th 191 (2023) .............................................................13, 14, 15, 16, 17

*In re KSL Media, Inc.*,
2016 WL 7637665 (C.D. Cal. Oct. 14, 2016) .................................................................15

*In re KSL Media, Inc.*,
732 F. App'x 535 (9th Cir. 2018) ....................................................................................15

*Ladd v. Cnty. of San Mateo*,
12 Cal. 4th 913 (1996) .....................................................................................................23

*Leakas v. Monterey Bay Military Hous., LLC*,
2022 WL 2161608 (N.D. Cal. June 15, 2022) ................................................................11

*Lebanon County Employees' Retirement Fund v. Amerisourcebergen Corp.*,
2020 WL 132752 (Del. Ch. Jan. 13, 2020) .....................................................................22

*Leyte-Vidal v. Semel*,
220 Cal. App. 4th 1001 (2013) ..................................................................................11, 16

*Marchand v. Barnhill*,
212 A.3d 805 (Del. 2019) ..........................................................................................16, 17

*Mardirosian v. Nationwide Credit, Inc.*,
2012 WL 13035476 (C.D. Cal. Oct. 10, 2012) ...............................................................25

*Mayall v. USA Water Polo, Inc.*,
174 F. Supp. 3d 1220 (C.D. Cal. 2016) ..........................................................................10

*Moshe v. TapIn2, Inc.*,
2019 WL 1883912 (C.D. Cal. Apr. 8, 2019) ....................................................................9

*O'Connor v. Uber Techs., Inc.*,
2013 WL 6354534 (N.D. Cal. Dec. 5, 2013) ..................................................................11

*Oakland Raiders v. Nat'l Football League*,
93 Cal. App. 4th 572 (2001) ............................................................................................13

*Off. Comm. of Bond Holders of Metricom, Inc. v. Derrickson*,
2004 WL 2151336 (N.D. Cal. Feb. 25, 2004) .................................................................18

*Pampena v. Musk*,
705 F. Supp. 3d 1018 (N.D. Cal. 2023) .......................................................................9, 21

iv

Gibson, Dunn &
Crutcher LLP

*Richardson v. Reliance Nat. Indem. Co.*,
2000 WL 284211 (N.D. Cal. Mar. 9, 2000) ........................................................23

*Riley v. Chopra*,
2022 WL 614450 (9th Cir. Mar. 2, 2022) ..........................................................16

*Rutherfurd v. Owens-Illinois, Inc.*,
16 Cal. 4th 953 (1997) .......................................................................................24

*In re Sagent Technology, Inc., Derivative Litig.*,
278 F. Supp. 2d 1079 (N.D. Cal. Aug. 15, 2003) ..............................................12

*Scott v. Security Title Insurance & Guarantee Co.*,
9 Cal.2d 606 (1937) ...........................................................................................19

*Sechrist v. Rev Recreation Grp., Inc.*,
2023 WL 8351517 (C.D. Cal. Oct. 23, 2023) .....................................................13

*Segway Inc. v. Cai*,
2023 WL 8643017 (Del. Ch. Dec. 14, 2023) ..........................................15, 18, 21

*Shopoff & Cavallo LLP v. Hyon*,
167 Cal. App. 4th 1489 (2008) ...........................................................................25

*In re Silver Lake Grp., LLC Sec. Litig.*,
108 F.4th 1178 (9th Cir. 2024) .............................................................................9

*Slovensky v. Friedman*,
142 Cal. App. 4th 1518 (2006), *as modified on denial of reh'g* (Oct. 12, 2006) ..........................23

*In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*,
903 F. Supp. 2d 942 (S.D. Cal. 2012) ................................................................24

*In re Space Case*,
2024 WL 1628440 (Bankr. D. Del. Apr. 15, 2024) ............................................20

*Steinley v. Health Net, Inc.*,
2018 WL 6985318 (C.D. Cal. Dec. 4, 2018) ......................................................10

*Stone v. Ritter*,
911 A.2d 362 (Del. 2006) ...................................................................................15

*SVB Fin. Tr. v. FDIC, as Receiver for Silicon Valley Bank et al.*,
No. 5:24-01321-BLF (N.D. Cal.) ..........................................................................9

*SVB Financial Trust v. FDIC*,
No. 5:23-cv-06543-BLF (N.D. Cal.) ......................................................................8

*In re Sybase, Inc. Sec. Litig.*,
48 F. Supp. 2d 958 (N.D. Cal. 1999) ..................................................................18

*In re Theos Dark Chocolate Litig.*,
750 F. Supp. 3d 1069 (N.D. Cal. 2024) ................................................................9

v

Gibson, Dunn &
Crutcher LLP

*Tianhai Lace Co. Ltd v. Zoetop Bus. Co.*,
    2023 WL 3549698 (C.D. Cal. Feb. 24, 2023) ................................................................11

*Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*,
    906 A.2d 168 (Del. Ch. 2006) ...............................................................................20, 23

*United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*,
    1 Cal.3d 586 (1970) ...............................................................................................19

*Vardanyan v. Moroyan*,
    2014 WL 3749655 (N.D. Cal. July 29, 2014) .............................................................13

*In re Verifone Holdings, Inc. S'holder Derivative Litig.*,
    2010 WL 3385055 (N.D. Cal. Aug. 26, 2010) ...........................................................16

*Walden v. Cooper Companies, Inc.*,
    2024 WL 4261498 (N.D. Cal. Sept. 9, 2024) .............................................................11

*Wright v. Yanos*,
    2017 WL 6040335 (E.D. Cal. Dec. 6, 2017) ..............................................................12

*Zelma v. Williams*,
    2011 WL 13298530 (M.D. Fla. Oct. 26, 2011) ..........................................................13

**STATUTES**

Cal. Corp. Code § 500(a) ...........................................................................................22

Gibson, Dunn &
Crutcher LLP

# **GLOSSARY OF TERMS USED**

| | |
|---|---|
| ALCO: | Asset Liability Management Committee |
| AFS: | Available-For-Sale |
| Bank or SVB: | Silicon Valley Bank |
| Board: | Silicon Valley Bank's Joint Board of Directors |
| Defendants: | Officers together with Defendants Eric Benhamou, Roger Dunbar, Joel Friedman, Mary Miller, Kate Mitchell, Beverly Matthews, Garen Staglin, Elizabeth Burr, Richard Daniels, Alison Davis, and Jeffrey Maggioncalda |
| DFPI: | California's Department of Financial Protection and Innovation |
| EVE: | Economic Value of Equity |
| Ex.: | Exhibit attached to RJN |
| FDIC-R or Plaintiff: | Plaintiff Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank |
| Fed: | Federal Open Market Committee |
| FRBSF: | Federal Reserve Bank of San Francisco |
| HTM: | Held-To-Maturity |
| NII: | Net Interest Income |
| Officers: | Defendants Daniel J. Beck, Gregory W. Becker, Marc Cadieux, Michael Descheneaux, Michael Kruse, and Laura Izurieta |
| SVBFG: | SVB Financial Group |

Gibson, Dunn &
Crutcher LLP

1

## NOTICE OF MOTION AND MOTION TO DISMISS

2      **PLEASE TAKE NOTICE** that on September 10, 2025, at 9:00 AM, or other such date and

3  time as the Court may order, Defendants Daniel J. Beck, Gregory W. Becker, Marc Cadieux, Michael

4  Descheneaux, Michael Kruse, and Laura Izurieta (the "**Officers**"), former officers of SVB Financial

5  Group ("**SVBFG**") and its subsidiary Silicon Valley Bank ("**SVB**") will move pursuant to Federal Rule

6  of Civil Procedure 12(b)(6) to dismiss the Plaintiff Federal Deposit Insurance Corporation as Receiver

7  for Silicon Valley Bank's ("**FDIC-R**" or "**Plaintiff**") Complaint.  ECF No. 1 (the "**Complaint**").  The

8  motion is based on this Notice, the Memorandum below, the Request for Judicial Notice and exhibits

9  attached thereto with the accompanying Declaration of Philip D. Anker, papers on file in this action,

10  oral argument, and other such matters as may be judicially noticed or come before the Court.[1]

11                ## STATEMENT OF ISSUES TO BE DECIDED

12      1.      Whether the Complaint should be dismissed for impermissible group pleading.

13      2.      Whether Plaintiff's negligence, gross negligence, and breach of fiduciary duty claims

14  should be dismissed for failure to plead any breach of a duty or damages caused by Defendants.

15              ## MEMORANDUM OF POINTS AND AUTHORITIES

16  ## I.    INTRODUCTION

17      In March 2023, SVB suffered an unprecedented, social media-fueled bank run that had nothing

18  to do with the Officers' management of SVB.  Indeed, due to the Officers' prudent management, SVB

19  withstood a remarkable $40 billion in deposit withdrawals in a single day—the largest bank run in U.S.

20  history—before regulators closed the bank on March 10, 2023.

21      Appreciating that it has no viable case against the Officers for the bank run, Plaintiff's

22  complaint is predicated instead on allegations that the Officers mismanaged SVB's liquidity and

23  interest rate risk.  Despite having two years to conduct an investigation and full access to all of the

24  Officers' corporate documents, Plaintiff's Complaint nevertheless sets forth no coherent theory of

25  negligence or breach of duty against the Officers.   Plaintiff's claims are nothing more than

26  foundationless hindsight critiques of SVB's fully disclosed investments in U.S. government bonds that

27  ---

[1] The Officers join the arguments of defendants Eric Benhamou, Roger Dunbar, Joel Friedman, Mary
28  Miller, Kate Mitchell, Beverly Matthews, Garen Staglin, Elizabeth Burr, Richard Daniels, Alison
Davis, and Jeffrey Maggioncalda (together with the Officers, "**Defendants**") in their motion to dismiss.

never defaulted and did not cause SVB's failure.  When stripped of its inflammatory rhetoric, the Complaint reflects that the Officers carefully, diligently, and in good faith executed their responsibilities.  Plaintiff fails to state a claim against the Officers for several reasons.

*First*, Plaintiff tries to obscure its inability to articulate any wrongdoing against any Officer by engaging in impermissible group pleading.  The Complaint does not provide notice to the seventeen director and officer defendants of who allegedly did what when—instead lumping all defendants together and alleging that they somehow "caused" SVB to do things through unspecified actions or inaction.  Plaintiff identifies no particular act or omission of any particular Officer that was purportedly negligent or a breach of duty.  Such impermissible "everyone did everything" pleading does not satisfy Rule 8(a)(2), especially in a breach of fiduciary duty case.

*Second*, the Complaint fails to allege the Officers breached the duty of care.  The Complaint's duty of care claims are based on purported failures of oversight and monitoring.  Such allegations are properly characterized as duty of oversight claims governed by the *Caremark* standard and fail because *Caremark* requires, yet the Complaint fails to plead, bad faith.

Even if the Complaint pled specific Officer decisions—as opposed to purported failures of oversight and monitoring—it fails to allege that the Officers lacked care or diligence.  Duty of care claims against corporate officers concern the process used in making decisions, not a hindsight analysis of whether a decision was correct.  The Complaint itself alleges that the Officers were informed and deliberated about SVB's securities portfolio and interest rate risks and that they made sure SVB's board committees were well informed as well.  The law requires no more.  Moreover, Plaintiff's duty of care theory is fatally undermined by SVB's regulators' acknowledgment in communications cited by the Complaint that SVB's interest rate risk management was reasonable and Plaintiff's acknowledgment that the Officers acted in the best interests of SVBFG as a whole.

*Third*, the Complaint fails plausibly to allege that the Officers breached the duty of loyalty. There is no divided loyalty between a parent company and its wholly owned subsidiary.  Nor was there anything remotely improper about an intracompany dividend from SVB to SVBFG to provide the latter liquidity—which is routinely done in this context and was a regular practice at SVB for years— especially when SVBFG had recently contributed *more than $7 billion* in capital to SVB.

Gibson, Dunn &
Crutcher LLP

*Fourth*, the Complaint fails to allege SVB incurred any losses caused by the Officers.  The Complaint does not and cannot tie anything the Officers allegedly did or failed to do to the social media-fueled bank run that caused SVB to fail.  Plaintiff claims that "SVB incurred billions of dollars in damages" because of Defendants, but the Complaint fails to identify any losses incurred by SVB.  SVB made money on its interest rate hedges and never lost money on the held-to-maturity securities portfolio; as Plaintiff acknowledges, any "losses" were "unrealized" and hypothetical.  Indeed, SVB's regulator concluded that SVB was in "sound financial condition" *the day before the bank run*, and SVB had *more than $40 billion* on hand to pay depositors during the bank run.

Ultimately, Plaintiff's threadbare claims in this case are merely a prop for its defense against SVBFG in a separate action regarding $1.93 billion in SVBFG deposits that Plaintiff has refused to turn over.  In that case, Plaintiff argues that it has a setoff defense against SVBFG for purportedly aiding and abetting Defendants in breaching their duties to SVB.  Plaintiff's allegations in this case are copied and pasted from its affirmative defenses against SVBFG.  Plaintiff does not deny this connection; it is seeking to consolidate the cases and seeks at least $1.93 billion in damages from Defendants, even though that number has no connection to the allegations here.  The Court should not permit Plaintiff to use Defendants as pawns in its dispute with SVBFG.  The Officers respectfully request the Court dismiss the Complaint with prejudice.

## II.    FACTUAL BACKGROUND

### A.    SVB's Board, Regulators, and ALCO Monitored SVB's Balance Sheet Risks

SVBFG was a bank holding company incorporated in Delaware.  Ex. 3 at 3.[2]  SVBFG owned SVB.  Ex. 9 at 30.  SVB was governed by a joint board of directors (the "**Board**") and board committees, including the Finance and Risk Committees.  Compl. ¶¶ 33–38.  SVBFG and SVB's principal regulators were the Federal Reserve Bank of San Francisco ("**FRBSF**") and the California Department of Financial Protection and Innovation ("**DFPI**").  *See, e.g.*, Ex. 9 at 2, 4.  Banking regulators give banks "CAMELS" scores on a 1 (highest) to 5 (lowest) scale across multiple categories.  *See, e.g.*, Ex. 11 at 10.  In 2020, 2021, and 2022, SVB's regulators gave it either a 1 or 2—the highest or second-highest score—for capital, asset quality, liquidity, and sensitivity to market risk.  Ex. 9 at 9;

---

[2] Cited page numbers refer to the PDF page numbers.

Gibson, Dunn &
Crutcher LLP

Ex. 11 at 10; Ex. 12 at 7.

The Officers were officers of both SVBFG and SVB. Compl. ¶ 26. Five of the six Officers (all except Mr. Becker) were members of the Asset Liability Management Committee ("**ALCO**"). *Id.* ¶ 27. SVB's Board delegated certain financial risk oversight responsibilities to the ALCO. *Id.* ¶ 36. The ALCO "had responsibility to monitor changes in the composition of SVBFG's and SVB's assets." *Id.* ¶ 39. The ALCO reviewed "strategies recommended by management that promote optimal financial performance while managing financial risks" and provided "advice" to management on how to balance competing factors relevant to SVB's investments, including "appropriate interest rate sensitivity" and "maximum shareholder value." *Id.* The Complaint does not allege that the ALCO or any of the Officers were required to approve the purchases or sales of individual securities by SVB.

The ALCO executed its monitoring and oversight responsibilities, meeting regularly to discuss the financial risks to SVB. *See, e.g.*, *id.* ¶¶ 48, 69, 81, 84, 85, 108. This diligence did not go unnoticed by SVB's regulators. For instance, in May 2021, SVB's regulators noted "the ALCO and Finance Committee have been meeting frequently to determine appropriate capital actions" and the ALCO was "actively" monitoring SVB's interest rate risk metrics. Ex. 11 at 13–14.

### B.    SVB Invested in Safe Government Securities When Short-Term Interest Rates Were Expected to Remain Near Zero for Years to Come

Between March 2020 and March 2022, the Federal Open Market Committee (the "**Fed**") maintained short-term interest rates at zero. The Fed's guidance in December 2020 was that short-term rates would remain "historically low" at 0% through the end of 2023. Compl. ¶ 48; Ex. 10 at 5. Even by the end of 2021, the Fed's guidance was that short-term interest rates would reach only 0.75% in 2022 and 1.5% by the end of 2023. Compl. ¶ 90.

SVB experienced significant growth in deposits during this period, as its customers—largely venture capital, technology, and life sciences companies—grew rapidly. *Id.* ¶¶ 42–46. SVBFG raised and injected more than $7.5 billion in capital into SVB during this period, diluting its shareholders to improve SVB's capital ratios. Ex. 11 at 13; Ex. 12 at 8. SVB invested the "bulk" of its new deposits in "government-backed debt securities, such as U.S. treasuries and mortgage-backed securities," fixed-income securities that would be repaid in full, plus interest, over a number of years. Compl. ¶¶ 47–48.

Gibson, Dunn &
Crutcher LLP

SVB classified many of these securities using "held-to-maturity" ("**HTM**") accounting, which records the value of securities that the bank has the ability and intent to hold to maturity at cost rather than at market value. *Id.* ¶¶ 3, 66. SVB classified a smaller portion of its securities as "available-for-sale" ("**AFS**"), an accounting standard that records the value of the securities at fair value. Ex. 3 at 12–13. SVB disclosed that its entire HTM securities portfolio was investment grade. Ex. 2 at 3.

In August 2022, SVB's regulators applauded SVB for investing in safe, fixed-income government securities because it "mitigate[d] some of the risks associated with its recent rapid growth." Ex. 12 at 8. These fixed-income securities diversified SVB's holdings and complemented SVB's loan portfolio, which SVBFG disclosed was primarily variable rate loans benefitting from higher interest rates. Ex. 3 at 4. SVBFG fully disclosed the characteristics of its securities portfolio to regulators and the market, including the types of securities, yields, duration, and maturity, *id.*; the market value of the HTM securities, even classified at cost, *id.* at 9; and that it could and did pledge its HTM securities to obtain short-term financing to meet its liquidity needs, *id.* at 5, 11.

The Officers monitored and routinely discussed SVB's investment strategy with each other and SVB's Board. Compl. ¶¶ 48, 69, 70, 82. SVB's investment strategy was discussed in "materials provided to the Finance Committee and internal communications among the Officer Defendants and Director Defendants on the Finance Committee, including at the Finance Committee meetings, Finance Committee strategy sessions, and Asset Liability Management Committee meetings." *Id.* ¶ 48. For instance, at a November 2020 ALCO meeting, the Officers on the committee analyzed how SVB's investments could be affected by rising interest rates. *Id.* ¶ 69.

SVB used two metrics to monitor interest rate risk. Ex. 3 at 6. The first, NII-at-Risk, monitored how interest rate changes would affect SVB's net interest income ("**NII**"), *i.e.*, the difference between income earned on loans and securities and SVB's costs to pay depositors and other funding sources. Ex. 2 at 4–6; Ex. 3 at 6–7. The second, EVE-at-Risk, measured how interest rate changes would affect the economic value of equity ("**EVE**"). Compl. ¶ 53. SVB's NII-at-Risk metric consistently showed that, as interest rates increased, SVB's income would increase. Ex. 2 at 6; Ex. 3 at 7. And, as SVB's securities portfolio grew, SVB disclosed that because those securities "generally have a higher market value sensitivity than variable rate loans or cash," its EVE would decline. Ex. 2 at 5.

In 2021 and 2022, because SVB's EVE-at-Risk metric at times exceeded an internal limit, the ALCO devoted extensive time to analyzing the issue.  Compl. ¶¶ 76–82.  The ALCO also appropriately reported and presented the matter to the Finance Committee.  *Id.* ¶¶ 80–82, 84; Ex. 11 at 13.  The ALCO was informed by other SVB personnel that one "risk mitigation strateg[y]" in response to the EVE breach was to classify more securities as HTM, which would protect SVB's capital ratios against fluctuations in interest rates.  Compl. ¶¶ 69, 78, 81.  SVB also began a year-long review process of its deposit model, which involved the Risk Committee and resulted in disclosed model changes.  Compl. ¶¶ 83–85; Ex. 5 at 4.

SVB's regulators were well-aware of the EVE breach and approved of SVB's response.  In May 2021, SVB's regulators found SVB's "[s]ensitivity to market risk remains satisfactory and adequately controlled" and "management appropriately reported the EVE breach to the ALCO where it is actively being monitored." Ex. 11 at 14.  Throughout this period, the Officers asked SVB personnel about "additional actions" to address EVE risk.  *See, e.g.*, Compl. ¶ 81.

**C.    SVB's Hedges Made SVB Money and Protected Hundreds of Millions of Dollars in SVB's Long-Term Profits from Higher Interest Rates**

Starting in March 2021, despite Fed guidance at the time that it would not raise interest rates for years, SVB hedged its AFS securities portfolio against the possibility of higher rates.  SVB "purchased interest rate swaps [i.e., hedges] to offset some of the additional EVE sensitivity that has resulted from rapid balance sheet growth."  Compl. ¶¶ 4, 96; Ex. 2 at 5.

SVB's interest rate hedges were highly successful.  As long-term interest rates increased, SVB's hedges gained hundreds of millions of dollars in value.  Compl. ¶ 98; Ex. 3 at 10, 11.  By March 2022, SVB's hedging position was worth approximately $400 million.  Compl. ¶ 100.  SVB's regulators concluded later in 2022 that the "hedges implemented in 2021 have effectively mitigated the bank's exposure to rising interest rates."  Ex. 12 at 9.

Following careful deliberation by the ALCO, SVB unwound its hedges to mitigate interest rate risks and lock in its gains on the hedges.  SVB had a large portfolio of loans with variable or floating interest rates, which would drop in value if interest rates fell.  Ex. 3 at 4.  SVB disclosed that its NII models showed significant risks to earnings from *lower* interest rates.  Ex. 4 at 7–8.  SVB's regulators

6

Gibson, Dunn &
Crutcher LLP

would also later report that SVB's "dynamic IRR simulations and projections" had "modeled and reported the balance sheet as asset sensitive," *i.e.*, that the models showed SVB would benefit from *higher* interest rates. Ex. 14 at 5. Accordingly, ALCO extensively deliberated regarding whether SVB should lock in its gains on its interest rate hedges and unwind those transactions as part of an overall "opportunity to re-invest the Treasury positions at higher rates." *See* Compl. ¶ 100. The ALCO informed the Finance and Risk Committees of those discussions. *Id.* ¶ 101. Between March and July 2022, SVB gradually unwound its interest rate hedges and locked in nearly $500 million of gains on those hedges. *Id.* ¶ 100; Ex. 4 at 3, 4, 8; Ex. 5 at 3. Those gains were not "short-term." *Contra* Compl. ¶ 99. Rather, SVBFG disclosed that it would recognize the gains over the life of the securities, which was approximately seven years. Ex. 5 at 3; *see also* Compl. ¶ 100 (stating that only $55 million of hedging gains would be recognized in the first year).

SVB's regulators approved of these transactions and its review process. In August 2022, SVB's regulators again determined that SVB "adequately controlled" its interest rate risk, noting the "bank has benefitted from the recent interest rate increases." Ex. 12 at 9. They found that SVB "[m]anagement has appropriately considered strategies to limit the impact of potential *declining* rate scenarios" and "[d]own rate mitigation strategies . . . [are] presented through the existing governance committees and subject to effective challenge by the second line independent risk function." *Id.*

### D.    SVB Authorized a Small Dividend While in Sound Financial Condition

Contrary to the Fed's guidance, short and long-term interest rates in 2022 rose to more than 4%. Compl. ¶ 92. SVB's deposit growth stopped, and the market value of SVB's securities, like all fixed-rate bonds and loans, declined. *Id.* ¶¶ 93, 113, 116, 119. But SVB's finances remained healthy. In 2022, SVB earned *more than $4 billion* in NII, an increase of more than $1 billion from 2021. Ex. 3 at 8. The Complaint does not allege that SVB sold or incurred any losses on its HTM securities, or that the U.S. government was at risk of defaulting on the securities before they reached maturity, such that SVB would not be paid in full (with interest). As the FDIC itself explained when it experienced more than $3 billion in "unrealized" losses to its own government securities (classified as AFS) because of higher interest rates in 2022: "The FDIC does not intend to sell the securities and is not likely to be required to sell them before their maturity date, thus, the FDIC does not consider these securities to be

7

other than *temporarily* impaired." Ex. 13 at 130 (emphasis added).

Accordingly, in late 2022, despite the decline in market value of SVB's HTM securities, SVB's regulators gave it the highest possible rating among large financial institutions for capital ("broadly meets expectations"), concluding that SVB's capital "reflect[ed] a sufficient buffer to comply with applicable regulatory requirements and to serve as a financial intermediary through a range of conditions." Ex. 12 at 7. SVB's regulators also continued to give SVB the second-highest possible score for liquidity and sensitivity to market risk, noting that "actual and post-stress liquidity positions reflect a sufficient buffer." *Id.* at 6, 9. Subsequently, SVB deliberated whether SVB should resume dividends to SVBFG, which had been suspended during SVB's growth period, Compl. ¶ 103, to improve SVBFG's liquidity. The topic was discussed in ALCO meetings, a memorandum to the Finance Committee, and a full Board meeting. Compl. ¶¶ 104, 105, 108–110, 113–115. The Board approved a $294 million dividend to SVBFG. *Id.* ¶ 114.

**E.    SVB Was in Sound Financial Condition Before It Failed Because of a Sudden, Unprecedented Social-Media Fueled Bank Run**

On March 8, 2023, SVBFG announced transactions "to take advantage of the potential for higher short-term rates . . . and enhance profitability." Ex. 1 at 7. SVBFG disclosed ample liquidity, including $15 billion in cash and $65 billion in borrowing capacity. *Id.* at 5–6, 8. DFPI subsequently concluded that SVB was in "sound financial condition prior to March 9, 2023." Ex. 15 at 2.

On March 9, 2023, according to the FDIC, "[o]ver the span of eight hours, SVB received deposit withdrawal requests for approximately $42 billion," which was "25% of its total deposits." *SVB Financial Trust v. FDIC*, No. 5:23-cv-06543-BLF (N.D. Cal.), ECF No. 175 at 53. This "run on deposits" was caused by SVB customers "deeply enmeshed in various social media websites, [who] took to the internet to voice concerns over SVB and urged their followers to withdraw their money. … This unique exposure to social media and rapid communication accelerated the run on deposits and hastened SVB's failure." *Id.* Remarkably, SVB had sufficient liquidity to cover more than $40 billion in withdrawals in one day, but the bank run accelerated. Ex. 15 at 2. On March 10, 2023, DFPI ordered SVB into receivership and appointed the FDIC as receiver. Compl. ¶ 1.

OFFICER DEFENDANTS' MOTION TO DISMISS
CASE NO. 5:25-CV-00569-NW

Gibson, Dunn &
Crutcher LLP

F.    **The FDIC Concocts Claims Against SVB's Directors and Officers as a Post-Hoc Rationalization for Keeping $1.93 Billion of SVBFG's Deposits**

Following the bank run, FDIC-R refused to turn over to SVBFG approximately $1.93 billion in deposits that SVBFG held at SVB; SVBFG filed two lawsuits against the FDIC, which have been consolidated. *SVB Fin. Tr. v. FDIC, as Receiver for Silicon Valley Bank et al.* ("SVBFT Action"), No. 5:24-01321-BLF (N.D. Cal.), ECF No. 1, ¶¶ 3, 33.  On May 2, 2024, the FDIC-R filed a notice, stating that it based its denial of SVBFG's claim on purported setoff claims belonging to the FDIC-R because SVBFG allegedly aided and abetted Defendants in breaching their fiduciary duties to SVB.  *See id.* ECF Nos. 29, 135.  On January 10, 2025, FDIC-R then filed its answer to SVBFG's claims and asserted its setoff claim.  *Id.* ECF No. 135 at 116–21.  A week later, Plaintiff filed the instant case against Defendants, which is largely copied and pasted from its answer in the SVBFT Action.  *Compare* ECF No. 1 *with SVBFT* Action, ECF No. 135 at 116–21.  The civil cover sheet in this case states that FDIC-R seeks $1.93 billion from Defendants—the total value of SVBFG's deposits at SVB.

## III.    **ARGUMENT**

To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  "[C]ourts do not 'accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences.'"  *In re Theos Dark Chocolate Litig.*, 750 F. Supp. 3d 1069, 1082 (N.D. Cal. 2024) (citation omitted).  In considering the sufficiency of a complaint, courts may consider documents "incorporated . . . by reference" or documents subject to "judicial notice" under Federal Rule of Evidence 201.  *In re Silver Lake Grp., LLC Sec. Litig.*, 108 F.4th 1178, 1185–86 nn.3–5 (9th Cir. 2024).  "This doctrine 'prevents plaintiffs from selecting only portions of documents that support their claims, while omitting portions of those very documents that weaken—or doom—their claims.'"  *Pampena v. Musk*, 705 F. Supp. 3d 1018, 1037–38 (N.D. Cal. 2023) (quotation omitted).  A court "need not accept . . . as true allegations that contradict matters properly subject to judicial notice or by exhibit."  *Gonzalez v. Planned Parenthood of Los Angeles*, 759 F.3d 1112, 1115 (9th Cir. 2014) (quotation omitted).

The elements of a breach of fiduciary duty are: "(1) existence of a fiduciary duty; (2) breach of the fiduciary duty; and (3) damage proximately caused by the breach."  *Moshe v. TapIn2, Inc.*, 2019

Gibson, Dunn & Crutcher LLP

WL 1883912, at *3 (C.D. Cal. Apr. 8, 2019) (quotation omitted).  The elements of negligence or gross negligence are: (1) duty, (2) breach, (3) causation, and (4) damages.  *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 314 (N.D. Cal. 2018) (citation omitted); *Mayall v. USA Water Polo, Inc.*, 174 F. Supp. 3d 1220, 1230 (C.D. Cal. 2016) ("Gross negligence is pleaded by alleging the traditional elements of negligence" plus "extreme conduct on the part of the defendant.").

**A.      The Complaint Fails to Give Defendants Fair Notice of the Claims Against Them**

Rule 8(a)(2) requires a complaint to provide notice of claims against each defendant as well as the conduct each defendant personally engaged (or failed to engage) in that satisfies the elements of each claim.  *Corazon v. Aurora Loan Services, LLC*, 2011 WL 1740099, at *4 (N.D. Cal. May 5, 2011). A "[p]laintiff must allege the basis of his claim *against each defendant* to satisfy Federal Rule of Civil Procedure 8(a)(2)."  *Gauvin v. Trombatore*, 682 F. Supp. 1067, 1071 (N.D. Cal. 1988) (emphasis added).  Allegations "that an indistinguishable group of defendants essentially engaged in identical misconduct . . . are insufficient to show that plaintiff is entitled to relief from any individual defendant." *Steinley v. Health Net, Inc.*, 2018 WL 6985318, at *5 (C.D. Cal. Dec. 4, 2018) (citation omitted).

The Complaint does not satisfy Rule 8.  Boiled down, it alleges that various actions were taken at SVB that increased its risk exposure over a multi-year period.  Plaintiff attributes these actions collectively to the "Officer Defendants" (and often to "the Finance and Risk Directors" as well) without specifying each individual Defendant's involvement, let alone what they did or did not do that satisfies the elements of negligence or breach of duty claims.  Nearly every allegation lumps all Defendants together without regard for differences in their roles, responsibilities, or any actual involvement (or lack thereof) in the underlying events.  The following are representative examples:

- "[T]he Officer Defendants and the Finance and Risk Directors caused SVB's ratio of HTM to AFS securities to increase well beyond the target . . . ."  Compl. ¶ 73.

- "[T]he Officer Defendants and Finance and Risk Directors caused SVB to continue to hold $98 billion in excessively long-duration HTM securities."  Compl. ¶ 92.

- "[T]he Officer Defendants and Finance and Risk Directors [] caused SVB to terminate all but $564 million of the swaps."  Compl. ¶ 98.

- "[S]enior management made no effort to stop the bank-to-parent dividend . . . ."  Compl. ¶ 119.

These assertions—that various groups comprising seventeen different people either caused or

10

failed to stop various unspecified transactions over a three-year period—fail to satisfy Rule 8 because they do not "alert [each Officer Defendant] as to what it allegedly did or how its conduct gives rise to liability." *Walden v. Cooper Companies, Inc.*, 2024 WL 4261498, at *4 (N.D. Cal. Sept. 9, 2024) (dismissing complaint for improper group pleading under Rule 8); *Corazon*, 2011 WL 174009, at *4 ("By failing to differentiate among defendants or specify which defendant is the subject of Plaintiff's various allegations, Plaintiff's Complaint violates Rule 8(a)(2)[.]").

As Ninth Circuit courts routinely recognize in dismissing complaints for failing to satisfy Rule 8, a plaintiff's "failure to allege what role each Defendant played in the alleged harm makes it exceedingly difficult, if not impossible, for individual Defendants to respond to [the complaint's] allegations." *In re iPhone Application Litig.*, 2011 WL 4403963, at *8 (N.D. Cal. Sept. 20, 2011); *Tianhai Lace Co. Ltd v. Zoetop Bus. Co.*, 2023 WL 3549698, at *3 (C.D. Cal. Feb. 24, 2023) (holding that "general allegations against all Defendants as joint participants . . . unduly obscure 'which allegations are targeted against which defendants'" (citations omitted)); *Leakas v. Monterey Bay Military Hous., LLC*, 2022 WL 2161608, at *4, *10 (N.D. Cal. June 15, 2022) (dismissing claims because complaint "lump[ed] together . . . multiple defendants in one broad allegation" and failed to "identify what action each Defendant took that caused Plaintiffs' harm") (citations omitted). The Complaint fails to delineate the role of each Defendant, rendering it "difficult, if not impossible" for each to understand the acts or omissions for which he or she is alleged to be liable.

It cannot be inferred that particular Officers were responsible for any specific acts simply because they served on a committee (*e.g.*, ALCO) or had a particular job title that touched on SVB's risk management. To the contrary, "California law does not impose liability on corporate officers merely for their role in the corporation, but only for wrongful acts in which they have been personally involved." *O'Connor v. Uber Techs., Inc.*, 2013 WL 6354534, at *18 (N.D. Cal. Dec. 5, 2013) (dismissing claims against corporate officers because simply "identifying their roles in the corporation . . . does not make it plausible that they were personally liable"); *see also Leyte-Vidal v. Semel*, 220 Cal. App. 4th 1001, 1014 (2013) (dismissing breach of duty claim because "bad faith [cannot] be inferred solely from a director's membership on an audit committee"). Plaintiff cannot state a claim by implying Defendants' wrongdoing based merely on titles or committee memberships. "Listing each

11

Defendant's employment position and [] general responsibilities . . . is not enough to establish . . . how each Defendant acted, or failed to act." *Wright v. Yanos*, 2017 WL 6040335, at *5 (E.D. Cal. Dec. 6, 2017) (citing *Ashcroft v. Iqbal*, 556 U.S. 662, 677 (2009)). "Without sufficient facts as to each Defendant's individualized conduct, Defendants are not provided with the fair notice required under [Rule 8]." *Id.* By contrast, for a complaint's grouping of multiple defendants to be permissible, it must "provide[] enough differentiating allegations to [allow defendants to] understand" what each "are accused" of having done. *Cf. EcoHub, LLC v. Recology Inc.*, 2023 WL 6725632, at *6 (N.D. Cal. Oct. 11, 2023). This Complaint fails to provide such differentiation. For example, the Complaint alleges "the Officer Defendants and Finance and Risk Directors caused SVB to continue to hold $98 billion in excessively long-duration HTM securities," Compl. ¶ 92, but nowhere alleges which, if any, of the Officers took an action that caused SVB to hold the alleged HTM securities, what the action was, when it was taken, how it was implemented, or anything else telling the Officers for what conduct Plaintiff seeks to hold them accountable.

Instructive is *In re Sagent Technology, Inc., Derivative Litig.*, 278 F. Supp. 2d 1079 (N.D. Cal. Aug. 15, 2003). There, plaintiffs sued thirteen officers and directors for breaches of fiduciary duties, alleging they "failed to establish and maintain adequate internal accounting controls." *Id.* at 1082–84. The court dismissed the complaint because it "ma[de] little distinction among any of the[] defendants," alleging for example that "[t]he Individual Defendants, particularly the members of the Audit Committee, . . . 'failed to implement and maintain an adequate internal accounting control system,'" without "clarify[ing] which defendants, and particularly which Audit Committee Members, . . . failed to maintain proper accounting controls, or when." *Id.* at 1093–94. The *Sagent* complaint "lump[ed] together thirteen 'individual defendants'" without specifying each's participation in purported wrongdoing and, therefore, did not satisfy Rule 8. *Id.* at 1094–96. The Complaint's group pleading allegations against the Officers are indistinguishable and should be dismissed for the same reasons.

The Complaint's few, sporadic references to specific Officers do not fix the group pleading problem. At most, they suggest certain Defendants communicated about particular topics but still do not specify who did what. *See, e.g.*, Compl. ¶¶ 101 ("The Officer Defendants communicated extensively about . . . the decision to terminate [the hedges], including Becker, Beck, Izurieta"), 108

12

("The resumption of the bank-to-parent dividend was discussed at [a meeting] where Kruse, Beck, and Descheneaux were in attendance."). Knowledge of topics discussed by the ALCO does not plausibly allege conduct in breach of a legal duty. *See AccuImage Diagnostics Corp. v. Terarecon, Inc.*, 260 F. Supp. 2d 941, 950 (N.D. Cal. 2003) ("[M]ere knowledge of [allegedly] tortious conduct by the corporation is not enough to hold a director or officer liable for the torts of the corporation."); *see also Zelma v. Williams*, 2011 WL 13298530, at *6 (M.D. Fla. Oct. 26, 2011) ("Mere 'awareness' of an act is not sufficient for liability if the decision was made by another officer."). The Complaint does not allege the Officers took any *actions* with respect to SVB's securities portfolio or anything else—likely because, as the Complaint itself states, the ALCO's "responsibility [was] to *monitor* changes in the composition of SVBFG's and SVB's assets," Compl. ¶ 39, and the Officer Defendants had a responsibility to "implement and *oversee* appropriate risk-management functions." *Id.* ¶ 123 (emphasis added). *Cf. e.g.*, *Gauvin*, 682 F. Supp. at 1071 (dismissing complaint per Rule 8 as it did not "state[] with any specificity how each private defendant allegedly deprived [the plaintiff] of a right" and "[i]nstead, all defendants are lumped together").

The Complaint should be dismissed in its entirety because it does not satisfy Rule 8. *See Bank of Am., N.A. v. Knight*, 725 F.3d 815, 818 (7th Cir. 2013) ("Each defendant is entitled to know what he or she did that is asserted to be wrongful. A complaint based on a theory of collective responsibility must be dismissed."); *Sechrist v. Rev Recreation Grp., Inc.*, 2023 WL 8351517, at *2 (C.D. Cal. Oct. 23, 2023) (same). It lumps all Defendants together—under the fiction that they are collectively responsible for alleged mismanagement at SVB notwithstanding their distinct responsibilities and involvement in the underlying events—without specifying how each Defendant breached a duty.

## B.    The Complaint Fails Plausibly to Allege the Officers Breached the Duty of Care

Plaintiff's negligence (Count I), gross negligence (Count II), and breach of fiduciary duty (Count III) claims fail because the Complaint does not plausibly allege a breach of any relevant duty owed by Defendants as corporate fiduciaries of SVB. "California courts have routinely relied 'on corporate law developed in the State of Delaware given that it is identical to California corporate law for all practical purposes.'" *Kanter v. Reed*, 92 Cal. App. 5th 191, 208 (2023) (quoting *Oakland Raiders v. Nat'l Football League*, 93 Cal. App. 4th 572, 586 n.5 (2001)); *see also Vardanyan v.*

13

Gibson, Dunn & Crutcher LLP

*Moroyan*, 2014 WL 3749655, at *2 (N.D. Cal. July 29, 2014) ("California corporate law is functionally identical to Delaware corporate law.").  That is also true in determining the duties of an officer under California law.  *See Bancroft-Whitney Co. v. Glen*, 64 Cal. 2d 327, 345 (1966) (relying on Delaware law for the "general rules applicable to the duties of a corporate officer."); *Gordon v. Bindra*, 2014 WL 2533798, at *4, *11 (C.D. Cal. June 5, 2014) (relying on Delaware law to establish officer and director duties).

Because the Complaint alleges the Officers failed to "oversee[]" "SVB's risks," Compl. ¶ 2, its claims are duty of oversight *Caremark* claims that require, but fail, to plead bad faith.  Even if the Complaint challenged specific decisions by the Officers rather than oversight, Plaintiff still fails to allege the Officers did not exercise due care.  And even if Plaintiff could mount a hindsight attack on the substance of how the Officers balanced risks to SVB, the very regulatory communications cited in the Complaint demonstrate the Officers' reasonable risk management.

### 1.    The FDIC-R's Purported Duty of Care Claims are *Caremark* Duty of Oversight Claims That Fail Because the Officers Acted in Good Faith

The Complaint alleges the Officers breached the duty of care, but it does not identify any specific decisions made or approved by the Officers, nor does it allege the Officers were responsible for approving SVB's investments or SVB's dividends.  *See supra* III.A–B.  Rather, Plaintiff takes issue with the Officers' oversight responsibilities.  Specifically, Plaintiff alleges the Officers' "fiduciary duty of care" was to "act[] as a prudent and diligent professional in conducting and *monitoring* the affairs of SVB."  Compl. ¶ 136 (emphasis added); *see also, e.g., id.* ¶¶ 39 (discussing ALCO's delegated responsibility from SVB's board to "*monitor* changes in the composition of [] SVB's assets" (emphasis added)), 123 (alleging duty to "*oversee* appropriate risk-management functions, processes, and controls for the Bank" (emphasis added)).  Plaintiff's claims are thus properly characterized as *Caremark* duty of oversight claims because they seek to hold the Officers liable for not providing sufficient oversight to prevent alleged losses, rather than for losses flowing from any specific decisions by the Officers.  *See In re Caremark Int'l Inc. Derivative Litig.*, 698 A.2d 959, 967 (Del. Ch. 1996) (distinguishing *Caremark* theory of liability for "*failure . . . to act*" to "prevent[] loss" from a "*decision* that results in a loss because that decision was ill advised or 'negligent'"); *Kanter*, 92 Cal. App. 5th at 210 (affirming

14

Gibson, Dunn &
Crutcher LLP

*Caremark* governs claims for "fail[ing] to monitor or oversee [business] operations" by "being informed of risks or problems requiring [management] attention"); *Segway Inc. v. Cai*, 2023 WL 8643017, at *4–5 (Del. Ch. Dec. 14, 2023) (dismissing mismanagement claims against officers under *Caremark* standard); *accord Foss on Behalf of Quality Sys. Inc. v. Barbarosh*, 2018 WL 5276292, at *7 (C.D. Cal. July 25, 2018) (claims against corporate management for "alleged failure to prevent harm to [California corporation] are commonly referred to as *Caremark* claims.").

Courts apply the *Caremark* standard when, like here, the "charging facts are replete with allegations expressly charging Defendants with failures of 'oversight.'" *In re KSL Media, Inc.*, 2016 WL 7637665, at *6–7 (C.D. Cal. Oct. 14, 2016). In *KSL Media*, the court held that plaintiffs' allegations amounted to "a *Caremark* claim" where they "expressly charg[ed] Defendants with failures of 'oversight,'" including for not providing "adequate financial and operational oversight and prevention of mismanagement," and "fail[ing] to maintain a[] reasonable amount of corporate or financial oversight." *Id.* at *6. The Ninth Circuit affirmed, holding that alleged "failures to oversee and actively monitor . . . unmistakably fall within the ambit of a *Caremark* claim." 732 F. App'x 535, 536 (9th Cir. 2018); *see also Kanter*, 92 Cal. App. 5th at 202 (applying *Caremark* in affirming dismissal of complaint alleging management "fail[ed] to take steps to maintain an adequate . . . risk management plan"). Likewise, Plaintiff's claims against the Officers here are premised on oversight duties—the Officers' duties to "*oversee* appropriate risk-management functions, processes, and controls for the Bank, including those related to interest-rate and liquidity risk, [] manage SVB's risk-management," to "supervise SVB employees," and as ALCO members to "monitor changes in the composition of SVBFG's and SVB's assets." Compl. ¶¶ 39, 123 (emphasis added); *see also, e.g.*, *id.* ¶¶ 2 ("losses . . . would have been avoided had Defendants properly overseen and managed SVB's risk."), 54 (asserting "insufficient oversight and risk management"), 55–57 (challenging "oversight" repeatedly).

To state a *Caremark* claim, a plaintiff must allege a director or officer "acted inconsistent with his fiduciary duties" and "*knew* he was so acting." *Kanter*, 92 Cal. App. 5th at 206 (quoting *Stone v. Ritter*, 911 A.2d 362, 365 (Del. 2006)). "Specifically, a *Caremark* claim exists when directors and officers [(1)] fail to implement any reporting or information system or controls or, [(2)] having implemented such controls, consciously fail to oversee their operations, thus disabling themselves from

being informed of risks or problems requiring their attention." *In re Verifone Holdings, Inc. S'holder Derivative Litig.*, 2010 WL 3385055, at *4 (N.D. Cal. Aug. 26, 2010).  Under either prong, pleading "bad faith is a *necessary condition*." *Kanter*, 92 Cal. App. 5th at 206.  Bad faith is required because fiduciaries are only "personally liable . . . for failing to make a good faith attempt to follow the procedures or failing to assure that adequate and proper corporate information and reporting systems exist[] that would enable them to be fully informed" about "risk." *In re Citigroup Inc. S'holder Derivative Litig.*, 964 A.2d 106, 123–24 (Del. Ch. 2009) (internal quotation marks omitted).  That is, directors and officers are not liable for "bad outcomes" but only for "bad faith" in how they conduct their duties.  *In re Gen. Motors Co. Derivative Litig.*, 2015 WL 3958724, at *11 (Del. Ch. June 26, 2015), *aff'd*, 133 A.3d 971 (Del. 2016); *accord Foss*, 2018 WL 5276292, at *8 (C.D. Cal. July 25, 2018) ("That Plaintiff characterizes the Board's response as a 'wrong' decision in response to alleged red flags is insufficient to plead bad faith or intentional misconduct."); *see also Leyte-Vidal v. Semel*, 220 Cal. App. 4th 1001, 1014 (2013) ("a mere negligent failure to monitor problems and control risks is insufficient to ascribe bad faith").  The necessity of bad faith makes "a *Caremark* claim . . . possibly the most difficult theory in corporation law upon which a plaintiff might hope to win a judgment." *Kanter*, 92 Cal. App. 5th at 206 (citation omitted).

Plaintiff fails to plead a *Caremark* claim.  *First*, far from pleading the Officers in bad faith "fail[ed] to implement any reporting or information system or controls" for interest rate risk, *Verifone*, 2010 WL 3385055, at *4, Plaintiff pleads SVB had "reporting systems and controls in place," *Foss*, 2018 WL 5276292, at *7.  Plaintiff recounts how SVB had multiple "unitary committees that acted on behalf of both boards, including the Finance Committee, the Risk Committee, and the Asset Liability Management Committee," Compl. ¶¶ 36–40, which oversaw reporting systems, monitoring, and discussions of SVB's financial risks.  *Id.*; *see Kanter*, 92 Cal. App 5th at 211 ("judicially noticed Board minutes demonstrat[ing] the existence of *some* oversight" was sufficient to warrant dismissal of complaint (emphasis added)); *Riley v. Chopra*, 2022 WL 614450, at *1 (9th Cir. Mar. 2, 2022) (existence of risk oversight committees demonstrated good faith effort to establish monitoring and reporting (citing *Marchand v. Barnhill*, 212 A.3d 805, 821 (Del. 2019))).  SVB had multiple interest rate risk metrics and models and policies for monitoring those metrics.  *See supra* Sec. II.  Plaintiff

acknowledges the Officers were informed of SVB's interest rate risks and extensively deliberated how to manage those risks, including through committee meetings, presentations, and memos. *See, e.g.*, Compl. ¶¶ 70 (discussion of memorandum and consultant material on "interest-rate risk"), 80–81 (presentations, reports, and committee discussions), 101 ("The Officer Defendants communicated extensively about the need for the AFS hedges and the decision to terminate them," and "[t]he Finance and Risk Directors also were kept informed."). Plaintiff's allegations that the Officers made the wrong decision in managing SVB's interest rate risks do not plead bad faith. *Gen. Motors*, 2015 WL 3958724, at *11 ("Plaintiffs conflate concededly *bad outcomes* from the point of view of the Company with *bad faith* on the part of the Board.").

*Second*, Plaintiff fails to plead facts showing the Officers "consciously fail[ed] to monitor or oversee . . . operations [and] thus disable[d] themselves from being informed of risks or problems requiring their attention." *Kanter*, 92 Cal. App. 5th at 210 (quoting *Marchand*, 212 A.3d at 821). The Complaint does the opposite: It demonstrates extensive monitoring, presentations, memoranda, and outside consultations initiated or reviewed by the Officers and the Board's Finance and Risk Committees regarding the composition of SVB's securities portfolio and its interest rate risks. *See* Compl. ¶¶ 36–40, 70. The Officers did not disregard risk metrics like EVE but instead brought the matter to "the ALCO where it [was] actively being monitored." Ex. 11 at 14.[3] The ALCO also monitored other risk metrics, including NII-at-Risk, which consistently showed rising rates would *increase* SVB's income. Ex. 2 at 6; Ex. 3 at 6–7. The Officers plainly did not "intentionally abandon[] or abdicat[e] their duties to monitor." *Kanter*, 92 Cal. App. 5th at 211.

*Third*, the Complaint's hindsight allegations that the Officers should have balanced business risk differently do not plead ignored "red flags." The Delaware Court of Chancery's opinion in *In re Citigroup* is instructive. There, the court dismissed plaintiffs' allegations that Citigroup's officers and directors knew of and ignored red flags of "worsening conditions in the subprime mortgage market"

---

[3] Plaintiff alleges this active monitoring led Defendants to, among other things, approve changes to the Bank's "deposit model." Compl. ¶¶ 80–82. While Plaintiff offers the conclusory allegation that model changes lacked "valid justification," *id.* ¶ 85, the changes were disclosed, Ex. 2 at 4, and were made after months of "discuss[ions]," "present[ations]," and "report[s]," Compl. ¶¶ 84–86, 101. Moreover, mere "changes to [a risk management] system . . . cannot be said to be in bad faith." *Gen. Motors*, 2015 WL 3958724, at *12.

Gibson, Dunn &
Crutcher LLP

but failed to prevent losses to the bank. 964 A.2d at 128. As the court explained, "the mere fact that a company takes on business risk and suffers losses—even catastrophic losses—does not evidence misconduct." *Id.* at 130. Likewise, in *Segway*, the Court of Chancery rejected claims that a former company officer "'willfully ignored' problems within her areas of responsibility." 2023 WL 8643017, at *4. The court held that "generic financial matters are far from the sort of red flags that could give rise to *Caremark* liability if deliberately ignored;" oversight claims are "not a tool to hold fiduciaries liable for everyday business problems;" and "[o]fficers' management of day-to-day matters does not make them guarantors of negative outcomes from imperfect business decisions." *Id.* at *4–5; *see also In re Sybase, Inc. Sec. Litig.*, 48 F. Supp. 2d 958, 962–63 (N.D. Cal. 1999) ("Plaintiffs cannot prevail as a matter of law by simply second-guessing" which of "various forecasting report[s]" management "should have relied on"). Similarly, here, the Complaint's premise that Officers should have responded differently to business risk indications cannot plead bad faith or a breach of the duty of oversight.

Because the Officers established and diligently monitored risk oversight systems in their areas of responsibility, the Complaint does not state a claim that they failed to satisfy the duty of oversight.

### 2.    The Complaint Fails Plausibly to Allege That the Officers Did Not Carefully and Diligently Execute Their Responsibilities.

Even if the Complaint had pled specific decisions by the Officers, it would still fail as a matter of law because it does not plausibly allege the Officers failed to exercise care or diligence in making any decision. To the contrary, it alleges the Officers followed a diligent process for giving reasoned consideration to the business risks that came before them. This is all the law requires.

Duty of care claims against officers and directors concern the *process* employed in making decisions, not hindsight evaluations of the merits or *outcomes* of their decisions. *See, e.g.*, *Brehm v. Eisner*, 746 A.2d 244, 264 (Del. 2000) ("Due care in the decisionmaking context is *process* due care only."); *Off. Comm. of Bond Holders of Metricom, Inc. v. Derrickson*, 2004 WL 2151336, at *4 (N.D. Cal. Feb. 25, 2004) ("lack of *substantive* due care" is "an impermissible allegation in the decision-making context"); *Caremark*, 698 A.2d at 967 ("What should be understood, but may not widely be understood by courts or commentators who are not often required to face such questions, is that compliance with a [fiduciary's] duty of care can never appropriately be judicially determined by

18

reference to *the content of the [] decision* that leads to a corporate loss, apart from consideration of the good faith *or* rationality of the process employed."). In evaluating the sufficiency of due care allegations, courts "properly focus on the decision-making process rather than on a substantive evaluation of the merits of the decision" because of the "inadequacy of the Court, due in part to a concept known as hindsight bias, to properly evaluate whether corporate decision-makers made a 'right' or 'wrong' decision." *In re Citigroup*, 964 A.2d at 124.

California law has long recognized that corporate officers cannot be personally liable in hindsight for "mere mistakes and errors of judgment." *Burt v. Irvine Co.*, 237 Cal. App. 2d 828, 852–53 (1965); *cf. Berg & Berg Enter., LLC v. Boyle*, 178 Cal. App. 4th 1020, 1048 (2009) (noting California's "judicial policy of deference to the exercise of good-faith business judgment in management decisions"). Similarly, longstanding California negligence law holds that "[e]rrors in judgment not due to want of care or diligence, or to fraud or unfair dealing, are not alone actionable." *Scott v. Security Title Insurance & Guarantee Co.*, 9 Cal.2d 606, 614 (1937); *see also United States Liab. Ins. Co. v. Haidinger-Hayes, Inc.*, 1 Cal.3d 586, 594 (1970) ("Liability is not incurred by a mere error of judgment in the exercise of discretion unless the error is based on want of care or diligence.").

Plaintiff fails to allege the Officers were insufficiently diligent in connection with any transaction. Rather, the Complaint reflects that the Officers diligently monitored various risks, including interest rate risk, to SVB's financial condition. *Supra* Sec. II.A–D. It describes extensive monitoring, presentations, and memoranda among the Officers and the Board's Finance and Risk Committees regarding the composition of SVB's securities portfolio and its interest rate risk. Compl. ¶¶ 68–86. Similarly, and even though it does not attribute an actual decision to any particular Officer, the Complaint acknowledges the Officers "communicated extensively about the need for the AFS hedges and the decision to terminate them" and that the "Finance and Risk Directors also were kept informed of decisions to terminate and monetize" the hedges. *Id.* ¶ 101. And the 2022 intracompany dividend was approved by the Board after the Officers discussed the matter and provided the Board with ample information. *Id.* ¶¶ 109–10, 114–15. In other words, Plaintiff never alleges the Officers failed diligently to execute their responsibilities; it merely disagrees with how they balanced risks to SVB. That does not establish "want of care or diligence." *Haidinger-Hayes*, 1 Cal.3d at 594.

19

Gibson, Dunn &
Crutcher LLP

Plaintiff's allegations instead show that Defendants engaged in proper process while serving as SVB's corporate management. That is all the law requires. *See Trenwick Am. Litig. Tr. v. Ernst & Young, L.L.P.*, 906 A.2d 168, 173 (Del. Ch. 2006) ("The complaint is entirely devoid of facts indicating that the board did not engage in an appropriate process of diligence . . . . Instead, the complaint argues from hindsight, that the fact that the holding company's strategy ultimately failed must mean that the process . . . was the product of culpably sloppy efforts."); *Gagliardi v. TriFoods Int'l, Inc.*, 683 A.2d 1049, 1052 (Del. Ch. 1996) (explaining that alleging "a corporation has suffered a loss as a result of a lawful transaction, within the corporation's powers . . . does not state a claim for relief against that fiduciary no matter how foolish the investment may appear in retrospect"); *In re Space Case*, 2024 WL 1628440, at *8 (Bankr. D. Del. Apr. 15, 2024) (dismissing duty of care claims against officers where "the facts alleged merely describe business decisions, some imperfect in hindsight, made by the Officers during a turbulent period of expansion"). In contrast to Plaintiff's present allegations about "exposing the Bank to . . . risks," Compl. ¶ 141, prior cases brought by the FDIC as receiver of California banks against management have been premised on a lack of diligence in underwriting specific loans or some sort of self-dealing with respect to specific transactions.[4] Plaintiff's theory that the Officers should be liable notwithstanding their diligence because SVB in hindsight should have invested in different U.S. government securities is unprecedented and unviable.

### 3. The Complaint Fails Plausibly to Allege that the Officers Made Any Unreasonable Decisions.

Even if Plaintiff could challenge the substance of the Officers' purported decisions, its Complaint and incorporated documents show SVB's interest rate risk management was reasonable.

*First*, the Complaint does not and cannot allege that any specific SVB investments were

---

[4] *See, e.g.*, *FDIC v. Switzer*, 2014 WL 12696532, at *1 (N.D. Cal. Apr. 9, 2014) (challenging "actions in reviewing and approving a series of loans between 2006 and 2008 resulted in approximately $12 million in losses"); *FDIC v. Faigin*, 2013 WL 3389490, at *1 (C.D. Cal. July 8, 2013) ("alleg[ed] that all nine loans were deficient"); *FDIC v. Van Dellen*, 2012 WL 4815159, at *1 (C.D. Cal. Oct. 5, 2012) ("claim[ed] Defendants were negligent and breached their fiduciary duties in approving certain [homebuilding] loans"); *FDIC ex rel. Cnty. Bank v. Hawker*, 2012 WL 2068773, at *1 (E.D. Cal. June 7, 2012) (challenged "12 real estate loans [that] result[ed] in County Bank's . . . failure").

imprudent or unreasonable.[5]  Plaintiff's attempt to hold the Officers liable for allegedly buying and

holding investment-grade government securities—which is what the FDIC does with its own deposit

insurance fund—is utterly implausible and without precedent.  *Cf. FDIC v. Perry*, 2012 WL 589569,

at *1 (C.D. Cal. Feb. 21, 2012) (claim against bank CEO when the bank originated risky loans to sell

them into the *secondary* market, and the loans defaulted after the secondary market collapsed).

 *Second*, SVB's regulators commended SVB's interest rate risk management in communications

cited in the Complaint, contradicting Plaintiff's hindsight claim that SVB's interest rate risks were

unreasonable.  *See Pampena*, 705 F. Supp. 3d at 1038 ("portions of those very documents" cited by

plaintiffs "doom . . . their claims").  Contrary to Plaintiff's conclusory assertion that Defendants

"exposed SVB to unreasonable risk," Compl. ¶ 2, in each of 2020, 2021, and 2022, SVB's regulators

gave it the second-highest possible score for sensitivity to market risk.  *See* Ex. 9 at 9; Ex. 11 at 10; Ex.

12 at 7.  SVB's regulators told the Officers in 2021 that "financial risks are effectively controlled,"

"[s]ensitivity to market risk remains satisfactory and adequately controlled," and that "management

appropriately reported the EVE breach to the ALCO where it is actively being monitored."  Ex. 11 at

11, 13.  And in August 2022, SVB's regulators again told the Officers that they were effectively

managing interest rate risk and applauded "[m]anagement [for] appropriately consider[ing] strategies

to limit the impact of potential declining rate scenarios."  Ex. 12 at 9.  They also told the Officers that

SVB's "actual and post-stress liquidity positions reflect a sufficient buffer" and gave SVB the highest

possible rating for capitalization.  *Id.* at 5–6.  That SVB's regulators lauded the Officers for their

prudent management of interest rate risk fatally undercuts the FDIC's allegations in the Complaint.

 *Third*, Plaintiff's allegations that the Officers benefitted SVBFG incurably undermines any duty

of care theory.  Compl. ¶¶ 2–5, 35, 64, 74, 88, 99, 102, 103, 105–107, 114, 120.  Plaintiff alleges SVB's

---

[5] Recent Delaware cases hold that duty of care claims against officers are subject to a gross negligence standard.  *See, e.g.*, *Segway Inc.*, 2023 WL 8643017, at *3 n.36.  But under either an ordinary or gross negligence standard, Plaintiff fails plausibly to allege that the Officers did anything unreasonable. Furthermore, Count II of the Complaint for gross negligence fails to assert a claim under California law.  "California law is the applicable standard for assessing liability in this instance" where Plaintiff purports to sue pursuant to its authority as receiver under "12 U.S.C. § 1821(k)."  *FDIC v. Castetter*, 184 F.3d 1040, 1044 (9th Cir. 1999); *cf.* Compl. ¶ 128 (raising § 1821(k)).  However, "California does not recognize a distinct common law cause of action for gross negligence apart from negligence." *Jimenez v. 24 Hour Fitness USA, Inc.*, 237 Cal. App. 4th 546, 552 n.3 (2015).

Gibson, Dunn &
Crutcher LLP

Board required ALCO to "promote optimal financial performance," "optimal allocation of capital resources," and "maximum shareholder value." *Id.* ¶ 39. The Officers had a duty to execute those responsibilities—not to prevent any possible risk to SVB. *Lebanon County Employees' Retirement Fund v. Amerisourcebergen Corp.*, 2020 WL 132752, at *21 (Del. Ch. Jan. 13, 2020).

Plaintiff does not and cannot plead that the Officers breached the duty of care based on SVB's regulator and Board-approved strategy of buying and holding U.S. government-backed securities.

### C. The FDIC-R Fails Plausibly to Allege a Breach of the Duty of Loyalty

In Count III, Plaintiff alleges the Officers breached their duties of loyalty to SVB by serving the interests of SVBFG, its parent and 100% owner. Compl. ¶¶ 134–144. Plaintiff is wrong. The Officers' duties of loyalty required them to act for the benefit of SVBFG.

As a threshold matter, the Complaint does not state a claim against the Officers with respect to the dividend because the decision to issue the dividend was the Board's, not the Officers', as the Complaint concedes. Compl. ¶ 115. (alleging that the dividend was approved by the Board, not the Officers). Under the California Corporations Code, only the Board, not the Officers, have authority over dividends. *See IIG Wireless, Inc. v. Yi*, 22 Cal. App. 5th 630, 650 (2018); Cal. Corp. Code § 500(a). What's more, the California Corporations Code preempts common law claims regarding dividends. *See FDIC v. Ching*, 2014 WL 3361974, at *4–5 (E.D. Cal. July 8, 2014) (holding that "common-law claims" about dividends are "preempted" by "[t]he California Corporations Code," which "delineate[s] the duties of directors to fiduciaries when making a distribution" and "occupies the field") (internal quotation marks omitted). As a result, Plaintiff's common law fraud claim against the Officers concerning the dividend is foreclosed as a matter of law.

But even if the Officers could be held responsible for the decision to issue the dividend, Plaintiff's claim fails anyway because it is premised on a fundamental misconception that SVB's officers owed fiduciary duties only to SVB, to the exclusion of SVBFG. Compl. ¶¶ 5, 35, 137 (Defendants' "duty of loyalty included . . . refusing to advance [the] business interests . . . [of] SVBFG, at the expense of SVB."). It is well established that directors and officers of wholly owned subsidiaries, like SVB, owe a duty of loyalty to their parent companies. "[I]n a parent and wholly-owned subsidiary context, the directors [and officers] of the subsidiary are *obligated only* to manage the affairs of the

22

subsidiary in the *best interests of the parent* and its shareholders." *Hamilton Partners, L.P. v. Englard*, 11 A.3d 1180, 1208 (Del. Ch. 2010) (emphasis added).[6]  The Court of Chancery's opinion in *Trenwick Am. Litig. Trust v. Ernst & Young, L.L.P.*, 906 A.2d 168, 202 (Del. Ch. 2006), is on all fours.  There, creditors of a wholly-owned subsidiary of Trenwick sued the subsidiary's officers and directors, all of whom were officers of the parent as well.  *Id.* at 200–201.  The plaintiffs alleged, like here, that the officers and directors breached their duties of loyalty by acting in the parent's best interest at the expense of the subsidiary—including by paying a dividend to the parent company.  *Id.*  The court dismissed the plaintiff's claim that the dividend was improper, explaining that the directors "were obligated" to manage the subsidiary "with loyalty" and "for the best interests" of the parent company, even if that made the subsidiary "less valuable as an entity." *Id.* at 202.  The *Trenwick* court's reasoning controls here and requires dismissal of Plaintiff's duty of loyalty claim.  Insofar as Defendants acted for the benefit of SVBFG, and at the request of SVBFG, they were faithfully discharging their duties to both entities—not abdicating any duties owed to SVB.[7]

### D.    The FDIC-R Fails Plausibly to Allege Losses Caused by the Officers

Independently, the Complaint should be dismissed in its entirety because it fails to allege SVB suffered damages caused by the Officers' alleged conduct.  *See Ladd v. Cnty. of San Mateo*, 12 Cal. 4th 913, 917 (1996) (stating that negligence requires pleading that "the breach [w]as *the proximate or legal cause* of the resulting injury"); *Slovensky v. Friedman*, 142 Cal. App. 4th 1518, 1534 (2006), *as modified on denial of reh'g* (Oct. 12, 2006) ("damage[s] proximately caused by the breach" is an

---

[6] *See also Asahi Kasei Pharma Corp. v. CoTherix, Inc.*, 138 Cal. Rptr. 3d 620, 628 (2012) ("A parent and its wholly owned subsidiary have a complete unity of interest"); *Anadarko Petroleum Corp. v. Panhandle Eastern Corp.*, 545 A.2d 1171, 1174 (Del. 1988) (same); *Richardson v. Reliance Nat. Indem. Co.,* 2000 WL 284211, at *12 (N.D. Cal. Mar. 9, 2000) (following *Anadarko* under California law); *Hamilton*, 11 A.3d at 1208–09 ("The fiduciary duties owed by directors of [] wholly owned subsidiaries run *only to the parent*." (emphasis added)).

[7] Plaintiff's struggle to state a claim is explained by the incoherence of its premise.  According to Plaintiff, the Officers breached their duties by "boosting SVBFG's short-term earnings and stock price" and liquidity via "a $294 million dividend" paid from SVB to SVBFG.  Compl. ¶¶ 105, 138.  Plaintiff cries foul because it says SVBFG needed to be a "source of strength" for SVB.  *Id.* ¶ 5.  But Plaintiff does not explain—because it cannot—why SVBFG would have had any obligation to contribute more capital to SVB or how a $294 million dividend to SVBFG made it any less of a source of strength for SVB.  History, including SVBFG's capital contributions of more than $7 billion to the bank in the years before the Bank's failure, would belie such a claim.

23

"element[] of a cause of action for breach of fiduciary duty"). Plaintiff must allege that an Officer's conduct was a "substantial factor" in causing injury. *Rutherfurd v. Owens-Illinois, Inc.*, 16 Cal. 4th 953, 968–69 (1997). The Complaint fails to plead damages and loss causation.

To start, Plaintiff does not specify the damages it claims to have suffered. "[V]ague and conclusory allegations regarding damages are insufficient to survive a motion to dismiss." *Burns v. HSBC Bank*, 2013 WL 12136377, at *5 (C.D. Cal. Aug. 26, 2013). The Complaint refers vaguely to SVB incurring "billions of dollars in damages," *e.g.*, Compl. ¶ 126, but never explains how and when those damages were incurred. Nor does Plaintiff explain what these "billions of dollars" allegedly related to, *e.g.*, whether they related to the outflow of deposits resulting from the bank run, the alleged paper losses in the HTM portfolio, or something else entirely. Plaintiff is silent on this because none of the alleged breaches of duty resulted in any pecuniary loss to SVB.

At most, Plaintiff claims that various decisions allegedly "exposed" or "overexposed" SVB to risk. *See, e.g.*, Compl. ¶¶ 3 (alleging that Defendants "overexposed SVB to investments in long-term securities"), 49 ("This investment strategy exposed SVB to severe interest-rate risk[.]"). That is insufficient to plead damages because "allegations of 'an increased risk of future harm, [are] insufficient to sustain a negligence claim under California law.'" *In re Sony Gaming Networks & Customer Data Sec. Breach Litig.*, 903 F. Supp. 2d 942, 963 (S.D. Cal. 2012); *see Castillo v. Seagate Tech., LLC*, 2016 WL 9280242, at *4 (N.D. Cal. Sept. 14, 2016) (dismissing negligence claim because "speculative harm or the mere threat of future harm is insufficient to constitute actual loss"); *cf. Holly v. Alta Newport Hosp., Inc.*, 612 F. Supp. 3d 1017, 1026 (C.D. Cal. 2020) ("[A] bare allegation of increased risk of [harm] is 'too speculative' . . . to show actual damages[.]").

Nor can Plaintiff allege that such risks materialized as pecuniary losses to SVB. *First*, Plaintiff claims that alleged "overconcentration of long-duration HTM assets exposed the Bank" to interest rate risk. Compl. ¶ 67. Nowhere does Plaintiff allege that this ever caused any pecuniary damages because—as Plaintiff admits—SVB did not recognize any losses associated with its HTM securities. *Id.* ¶ 64 (alleging that "SVB's *unrealized* losses in its HTM portfolio skyrocketed"). At most, the value of the portfolio fluctuated as interest rates changed, but that is insufficient to plead damages. *Dorman v. Charles Schwab Corp.*, 2019 WL 580785, at *6 (N.D. Cal. Feb. 8, 2019) (mere fluctuations in value

24

Gibson, Dunn & Crutcher LLP

over a "relatively short" period do not constitute actionable damages); *Fishman Haygood Phelps Walmsley Willis & Swanson, L.L.P. v. State Street Corp.*, 2010 WL 1223777, at *6 (D. Mass. 2010) (dismissing ERISA breach of fiduciary duty claim because "Plaintiffs have not shown that any injury from these unrealized losses is imminent"). Plaintiff does not allege that any of the HTM securities have defaulted or likely ever will. *Shopoff & Cavallo LLP v. Hyon*, 167 Cal. App. 4th 1489, 1509 (2008) ("Breach of duty causing only speculative harm is insufficient to create such a cause of action. . . . [D]amages may not be based upon sheer speculation or surmise, and the mere possibility or even probability that damage will result from wrongful conduct does not render it actionable.").

*Second*, Plaintiff faults the Officers for unwinding the SVB's AFS hedges starting in late 2021, claiming this also exposed SVB to interest rate risk. Compl. ¶¶ 96–102. Far from costing SVB money, however, these transactions generated hundreds of millions of dollars of profit over a seven-year period. *Id.* ¶ 100 (referring to "*our $400MM hedging gain*"). Plaintiff claims that decision was imprudent in hindsight, but it did not cost the bank any money. *Mardirosian v. Nationwide Credit, Inc.*, 2012 WL 13035476, at *4 (C.D. Cal. Oct. 10, 2012) ("Negligence is only actionable when an actual loss has occurred.").

*Third*, the $294 million dividend SVB paid SVBFG does not suffice to plead damages. What Plaintiff dramatically calls "[p]lunder[ing]" SVB was, in reality, the routine return of less than 5% of the more than $7 billion in capital that SVBFG had injected into SVB. Compl. ¶¶ 32, 103, 110 (acknowledging that "SVB historically had paid a 'bank to parent' dividend to SVBFG"). Plaintiff does not allege that the $294 million ever left SVB or that it would have made any difference in the historically unprecedented bank run on SVB, where customers withdrew $42 billion in deposits—142 times the size of the dividend—in just one day. It is simply implausible that the dividend caused any cognizable losses to SVB. *See Dhoat v. Walia*, 2024 WL 4804980, at *8 (N.D. Cal. Nov. 15, 2024) (dismissing plaintiff's claim for breach of fiduciary duty for lack of causation).

The Complaint fails plausibly to plead any Bank losses, let alone caused by the Officers.

## IV.    **CONCLUSION**

The Complaint's claims against the Officers should be dismissed with prejudice.

OFFICER DEFENDANTS' MOTION TO DISMISS
CASE NO. 5:25-CV-00569-NW

Gibson, Dunn & Crutcher LLP

Dated: April 16, 2025          Respectfully submitted,

**GIBSON, DUNN & CRUTCHER LLP**

/s/ *Darren LaVerne*

BARRY BERKE, *admitted pro hac vice*
(bberke@gibsondunn.com)
DARREN LAVERNE, *admitted pro hac vice*
(dlaverne@gibsondunn.com)
DANIEL KETANI, *admitted pro hac vice*
(dketani@gibsondunn.com)
200 Park Avenue
New York, NY 10166-0193
Tel: (212) 351-4000
Fax: (212) 351-4035

MICHAEL D. CELIO
(mcelio@gibsondunn.com)
One Embarcadero Center, Suite 2600
San Francisco, CA 94111-3715
Tel: (415) 393-8200
Fax: (415) 393-8306

*Counsel for Defendant Daniel J. Beck*

Dated: April 16, 2025          **LATHAM & WATKINS LLP**

/s/ *Christopher L. Garcia*
CHRISTOPHER L. GARCIA, *admitted pro hac vice*
(christopher.garcia@lw.com)
RAQUEL KELLERT, *admitted pro hac vice*
(raquel.kellert@lw.com)
MATTHEW P. VALENTI, *admitted pro hac vice*
(matthew.valenti@lw.com)
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864

ALEXANDER WYMAN
(alex.wyman@lw.com)
355 S. Grand Avenue
Ste 100
Los Angeles, CA 90071
Tel: (213) 485-1234

*Counsel for Defendant Michael Kruse*

Gibson, Dunn & Crutcher LLP

1

Dated:  April 16, 2025                                         **ORRICK, HERRINGTON & SUTCLIFFE LLP**

2
                                                                              */s/ James N. Kramer*
                                                                              JAMES N. KRAMER
3                                                                             (jkramer@orrick.com)
                                                                              405 Howard Street
4                                                                             San Francisco, CA 94105-2669
                                                                              Tel: (415) 773-5900
5                                                                             Fax: (415) 773-5759

6                                                                             KEVIN M. ASKEW
                                                                              (kaskew@orrick.com)
7                                                                             355 S. Grand Ave.
                                                                              27th Floor
8                                                                             Los Angeles, CA 90071
                                                                              Tel: (213) 629-2020

9                                                                             JAMES D. HOUGHTON, *admitted pro hac vice*
                                                                              (jhoughton@orrick.com)
10                                                                            222 Berkeley Street
                                                                              Suite 2000
11                                                                            Boston, MA 02116
                                                                              Tel: 617-880-1923
12                                                                            Fax: 617-880-1801

13                                                                            *Counsel for Defendant Gregory W. Becker*

14

15    Dated:  April 16, 2025                                         **MORRISON & FOERSTER LLP**

16                                                                            */s/ Jordan Eth*
                                                                              JORDAN ETH
17                                                                            (jeth@mofo.com)
                                                                              425 Market Street
18                                                                            San Francisco, CA 94105-2482
                                                                              Tel: (415) 268-7126
19                                                                            Fax: (415) 268-7522

20                                                                            JAMIE A. LEVITT, *admitted pro hac vice*
                                                                              (jlevitt@mofo.com)
21                                                                            250 West 55th Street
                                                                              New York, NY 10019
22                                                                            Tel: (212) 468-8000
                                                                              Fax: (212) 468-7900

23                                                                            *Counsel for Defendant Marc Cadieux*

24

25

26

27

28

Gibson, Dunn & Crutcher LLP

OFFICER DEFENDANTS' MOTION TO DISMISS
CASE NO. 5:25-CV-00569-NW

Dated:  April 16, 2025

**HOGAN LOVELLS US LLP**

*/s/ Peter G. Spivack*
PETER G. SPIVACK
(peter.spivack@hoganlovells.com)
555 13th Street, NW
Washington, DC 20004
Tel: (202) 637-5631

MEGAN R. NISHIKAWA
(megan.nishikawa@hoganlovells.com)
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Tel: (415) 374-2300

NICHOLAS LAURIDSEN
(nicholas.lauridsen@hoganlovells.com)
1999 Avenue of the Stars
Suite 1400
Los Angeles, CA 90067
Tel: (310) 785-4736

*Counsel for Defendant Michael Descheneaux*

Dated:  April 16, 2025

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

*/s/ Mark R.S. Foster*
MARK R.S. FOSTER
(mark.foster@skadden.com)
525 University Avenue
Palo Alto, CA 94301
Tel: (650) 470-4580

DAVID MEISTER, admitted pro hac vice
(david.meister@skadden.com)
One Manhattan West
New York, NY 10001-8602
Tel: (212) 735-2100

ANITA B. BANDY, admitted pro hac vice
(anita.bandy@skadden.com)
1440 New York Avenue, N.W.
Washington DC 20005
Tel: (202) 371-7570
Fax: (202) 393-5760

ABIGAIL ELIZABETH DAVIS, admitted pro hac vice
(abigail.sheehan@skadden.com)
1000 Louisiana Street, Suite 6800
Houston, TX 77002
Tel: (713) 655-5120

*Counsel for Defendant Laura Izurieta*

Gibson, Dunn & Crutcher LLP

1

## **ATTESTATION PURSUANT TO CIVIL LOCAL RULE 5-1(i)(3)**

2

3       Pursuant to Civil Local Rule 5-1(i)(3), I attest that concurrence in the filing of this document

4   has been obtained from the other signatories.

5

6   DATED: April 16, 2025                    */s/ Darren LaVerne*

7                                            Darren LaVerne

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

29