JORDAN ETH (SBN 121617)
JEth@mofo.com
MORRISON & FOERSTER LLP
425 Market Street,
San Francisco, California 94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

JAMIE A. LEVITT (*admitted pro hac vice*)
JLevitt@mofo.com
MORRISON & FOERSTER LLP
250 West 55th Street
New York, New York 10019-9601
Telephone: 212.468.8000
Facsimile: 212.468.7900

Attorneys for Defendant
MARC CADIEUX

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| FEDERAL DEPOSIT INSURANCE CORPORATION as Receiver for Silicon Valley Bank,<br><br>Plaintiff,<br><br>v.<br><br>GREGORY BECKER, DANIEL BECK, MARC CADIEUX, MICHAEL DESCHENEAUX, MICHAEL KRUSE, LAURA IZURIETA, ERIC BENHAMOU, ROGER DUNBAR, JOEL FRIEDMAN, MARY MILLER, KATE MITCHELL, BEVERLY MATTHEWS, GAREN STAGLIN, ELIZABETH BURR, RICHARD DANIELS, ALISON DAVIS, and JEFFREY MAGGIONCALDA,<br><br>Defendants. | Case No. 5:25-CV-00569-NW<br><br>**DEFENDANT MARC CADIEUX'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFF'S COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**<br><br>Date: September 10, 2025<br>Time: 9:00 a.m.<br>Judge: Hon. Noël Wise<br>Dept.: Courtroom 3 – 5th Floor<br><br>Complaint Filed: January 16, 2025<br>Trial Date: Not yet set |

**NOTICE OF MOTION TO DISMISS**

PLEASE TAKE NOTICE that on August 20, 2025, at 9:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Noël Wise, located at 280 South First Street, San Jose, CA 95113, Courtroom 3, 5th Floor, Defendant Marc Cadieux ("Mr. Cadieux"), will, and hereby does, move pursuant to Federal Rules of Civil Procedure 8 and 12(b)(6) to dismiss the Complaint (the "Complaint" or "Compl.") filed on January 16, 2025, as it pertains to Mr. Cadieux. This Motion is based on this Notice, the accompanying Memorandum of Points and Authorities, the Memorandum of Points and Authorities in Support of the Officer Defendants' Motion to Dismiss (the "Officers' Motion"), and such other argument and materials as may be presented before this Motion is taken under submission.

# INTRODUCTION

Marc Cadieux—a 33-year Silicon Valley Bank ("SVB") veteran and SVB's *current* President—does not belong in this case. The Federal Deposit Insurance Corporation (the "FDIC" or Plaintiff") has named Mr. Cadieux as a Defendant because, at the time of the bank's collapse, he held the title of Chief Credit Officer. But Plaintiff's claims against Mr. Cadieux do not match the role he played. Throughout his decade-long tenure as Chief Credit Officer, Mr. Cadieux managed the credit risk in SVB's loan portfolio—a function the Complaint does not challenge, and that no one claims had anything to do with SVB's failure or the FDIC's alleged losses.

After a two-year investigation with access to all of SVB's documents, the FDIC does not allege that Mr. Cadieux had any authority over the decisions that allegedly led to SVB's failure. Instead, as the FDIC well knows, Mr. Cadieux stayed with SVB after its demise and through *Plaintiff's* receivership, working tirelessly to help the FDIC manage SVB, serve its clients, and market its assets to prospective acquirers, resulting in a successful sale to First Citizens. Indeed, in the wake of SVB's collapse, Plaintiff, acting through the FDIC-appointed chief executive, appointed Mr. Cadieux to Interim Head of Commercial of Silicon Valley Bridge Bank (the "Bridge Bank"). Then, after the bank reemerged as a division of its new owner, First Citizens, Mr. Cadieux was entrusted to serve as SVB's President—the position he holds to this day.

Without alleging any specific conduct by Mr. Cadieux, Plaintiff lumps him into generalized allegations against SVB's most senior leaders. Beyond the caption and preamble, the Complaint mentions Mr. Cadieux only seven times. Two of those instances list his title and role on SVB's Asset Liability Management Committee ("ALCO"); four others are vague allegations against several Defendants that do not specify who did what. (Compl. ¶¶ 131-132, 139-140.) The *single* allegation of specific conduct is a purported conversation at an ALCO meeting—not a vote or any decision-making. (*Id.* ¶ 101.) This broad-stroke pleading not only fails, but harms Mr. Cadieux's stellar reputation in the banking industry. The Complaint contains no specific allegations of wrongdoing by Mr. Cadieux, nor causation. For the reasons set forth herein and in the Officers' Motion,[1] the Court should dismiss the claims against Mr. Cadieux, with prejudice.

---

[1] Mr. Cadieux joins the Officers' Motion, dated April 16, 2025.

# BACKGROUND

### A. AS CHIEF CREDIT OFFICER, MR. CADIEUX MANAGED THE CREDIT RISK IN SVB'S LOAN PORTFOLIO, NOT ITS INVESTMENT RISK

Mr. Cadieux is a commercial lending professional who has spent the past three decades at SVB. (Ex. 1 at 24.)[2] Since 1992, he held a variety of positions of responsibility at SVB in lending, credit administration, business development, and client relationship management. (*Id.*) In 2009, Mr. Cadieux was appointed Assistant Chief Credit Officer and in 2013, he was promoted to Chief Credit Officer. (*Id.*; Compl. ¶¶ 10, 26-27.) Mr. Cadieux held that position until after SVB's receivership in March 2023. As Chief Credit Officer, Mr. Cadieux was responsible for managing the credit quality of SVB's loan portfolio, (Ex. 3 at 70), subject to Risk Committee oversight. (Ex. 1 at 10.) The Complaint does not include any allegations about or criticisms of SVB's loan portfolio or credit quality—the area under Mr. Cadieux's supervision.

Consistent with his credit administration duties, Mr. Cadieux also served as a member of SVB's ALCO from September 2013 to March 2023. (*See* Compl. ¶¶ 10, 36; Ex. 4 at 25-26.) The Complaint alleges ALCO "had responsibility to monitor changes in the composition of SVBFG's and SVB's assets." (Compl. ¶ 39.) But it never alleges ALCO was a decision-maker; only that the Officer Defendants on ALCO were "on notice" about SVB's investment strategy. (Compl. ¶ 49.) As described in the Complaint and contemporaneous SEC filings, ALCO "recommend[ed]" "policy guidelines" as well as "courses of action to address [SVB's] actual and projected liquidity needs" to the Finance and Risk Committees of the Board. (*See* Ex. 2 at 87; Compl. ¶¶ 39, 108.) The Complaint fails to allege that either Mr. Cadieux or any ALCO members were required to— or did—approve SVB's purchases or sales of individual securities.[3]

### B. MR. CADIEUX WAS, AND IS, PIVOTAL TO SVB'S SUCCESS

The Complaint against Mr. Cadieux ignores that, after SVB's collapse, Mr. Cadieux stayed with the bank and worked tirelessly *with the FDIC* to guide SVB through a challenging

---

[2] Unless otherwise noted, references to "Ex. __" are to the exhibits attached to the Declaration of Jordan Eth in Support of Defendant Marc Cadieux's Motion to Dismiss.

[3] In any event, SVB's principal regulators—were aware and approved of SVB's risk management strategy. *See, e.g.*, Officers' Motion at Sections I and II(A).

1  period. Tim Mayopoulos, chosen by Plaintiff as chief executive of Bridge Bank, appointed Mr.
2  Cadieux to be SVB's Interim Head of Commercial. In this and his prior role, Mr. Cadieux
3  collaborated with the FDIC-appointed CEO to help SVB re-open as the Bridge Bank, serve its
4  clients, and market its assets to prospective acquirers, resulting in the FDIC's sale of most of
5  SVB's assets to First Citizens.

6  On June 8, 2023, First Citizens appointed Mr. Cadieux to President of SVB's commercial
7  business—the position he maintains to this day. (Ex. 5.) Yet now, the FDIC, which relied on Mr.
8  Cadieux's services to stabilize the commercial bank and effectuate a sale, attempts to blame him
9  for decisions it does not even allege he made.

## ARGUMENT

### I.   THE COMPLAINT'S SHOTGUN PLEADING IS IMPERMISSIBLE

Devoid of specific allegations against Mr. Cadieux, the Complaint relies on group allegations against Defendants, and for each count, incorporates in broad strokes over a hundred paragraphs by reference. (*See, e.g.*, Compl. ¶¶ 122, 127, 134.) The Complaint describes three categories of purported misconduct: (1) a $294 million dividend from SVB to its parent company (*id.* ¶ 5); (2) overexposure to investments in long-term securities (*id.* ¶ 3); and (3) termination of interest rate hedges (*id.* ¶ 4.) It asserts claims against Mr. Cadieux, lumped together with the Officer Defendants, for negligence, gross negligence, and breach of fiduciary duty.

Plaintiff, however, does not allege that Mr. Cadieux engaged in *any* of these three events, nor how he caused the bank any harm. And, in the one instance where Plaintiff purports to differentiate amongst Defendants—the $294 million dividend vote—the Complaint reveals that Mr. Cadieux was *not* involved in that decision. (Compl. ¶ 108.) As such, the Complaint fails to assert how Mr. Cadieux's conduct meets the elements of any of the claims.

The blanket accusations against Mr. Cadieux are exactly the type of impermissible "shotgun" or "group" pleading that courts in the Ninth Circuit reject under Rule 8(a)(2). *Yagman v. Wunderlich*, No. 2:21-cv-06093-SB-MRW, 2021 WL 5707166, at *3 (C.D. Cal. Nov. 22, 2021) (dismissing complaint for failure to allege specific allegations against each individual defendant), *aff'd*, 2022 WL 2800816 (9th Cir. July 18, 2022); *Leakas v. Monterey Bay Military*

*Hous., LLC*, No. 22-CV-01422-VKD, 2022 WL 2161608, at *4, 10 (N.D. Cal. June 15, 2022) (dismissing claims because complaint "lump[ed] together . . . multiple defendants in one broad allegation" and failed to "identify what action each Defendant took that caused Plaintiffs' harm") (citations omitted)); *Corazon v. Aurora Loan Services, LLC*, No. 11-00542 SC, 2011 WL 174009, at *4 (N.D. Cal. May 5, 2011) ("By failing to differentiate among defendants or specify which defendant is the subject of Plaintiff's various allegations, Plaintiff's Complaint violates Rule 8(a)(2)"); *Sollberger v. Wachovia Sec., LLC*, No. SACV 09-0766AGANX, 2010 WL 2674456, at *5 (C.D. Cal. June 30, 2010) (finding that "shotgun pleading style" of incorporating 197 paragraphs "as if fully set forth herein" is impermissible).

If all the FDIC can do after two years of investigating and access to all of SVB's documents is sweep Mr. Cadieux in with the usual suspects, the claims against him should be dismissed. *See Pension Ben. Guar. Corp. ex rel. St. Vincent Cath. Med. Centers Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 723–24 (2d Cir. 2013) (affirming dismissal of a case where plaintiffs had access to documents that provided the specific information from which it could file a complaint).

## II. THE COMPLAINT FAILS TO ALLEGE ANY SPECIFIC WRONGFUL ACTS BY MR. CADIEUX

As an initial matter, the FDIC never alleges that Mr. Cadieux or ALCO had decision-making authority over any of the actions described in the Complaint, nor could it. The Complaint only alleges ALCO was "on notice" about SVB's investment strategy. (Compl. ¶ 49.) The FDIC fails to plead proximate cause for negligence because it has not—and cannot—allege that Mr. Cadieux's conduct was a "substantial factor" in causing the damages for which relief is sought. *Fed. Deposit Ins. Corp. v. Switzer*, No. 3:13-CV-03834-RS, 2014 WL 12696532, at *2 (N.D. Cal. Apr. 9, 2014).

The Complaint also fails to allege that Mr. Cadieux specifically was involved in any of the three alleged wrongful acts described in the pleadings.

First, although the Complaint claims breaches of fiduciary duty against the group of Defendants based on SVB's alleged $294M dividend to SVBFG (*see* Compl. ¶¶ 102, 138(c)), it

does not allege that Mr. Cadieux (a) approved the payment, (b) received a benefit for the payment, nor (c) sought to benefit others—including SVBFG—through the payment. (*Id*. ¶¶ 103, 105, 108.) Critically, Plaintiff concedes that, unlike other Defendants, Mr. Cadieux was neither responsible nor present for the decision to approve the dividend. Plaintiff's concession necessitates dismissal of the claims against him relating to the dividend. *See Gillespie v. Cnty. of Alameda*, No. 20-CV-03735-DMR, 2020 WL 5106858, at *2 (N.D. Cal. Aug. 31, 2020) (dismissing complaint that did not establish defendant's presence at the incident).

Second, Plaintiff asserts the Officer Defendants caused SVB's losses by overexposing SVB to long-term securities. But the Complaint does not—and cannot—allege that Mr. Cadieux, as Chief Credit Officer, had any role in those long-term securities investment decisions. (*See* Compl. ¶¶ 73, 92.) Thus, he cannot be held liable for them.

Third, the Complaint speculates that the Officer Defendants caused SVB to terminate interest rate swaps, but again, fails to allege Mr. Cadieux's involvement. (Compl. ¶ 98.) It vaguely alludes to "Officer Defendants" communicating with unspecified people about a purported need for AFS hedges and the decision to terminate them, (*id.* ¶ 101), but it does not allege that Mr. Cadieux was involved in these discussions, nor that he had the authority to cause these terminations. There is no indication that Mr. Cadieux—as Chief Credit Officer— had any authority to make the decision, nor advised the decisionmakers. (*See id*. ¶ 27.)

In light of the two-year investigation and access to all of SVB's documents, the FDIC should not be given another opportunity to plead a claim against Mr. Cadieux. *See Flores v. Cnty. of Fresno*, No. 119CV01477DADBAM, 2021 WL 3287715, at *12 (E.D. Cal. Aug. 2, 2021) (dismissing without leave to amend when plaintiff had access to records months before the complaint).

## CONCLUSION

For the reasons set forth herein, and in the Officers' Motion, the claims against Mr. Cadieux should be dismissed, with prejudice.

Dated: April 16, 2025

MORRISON & FOERSTER LLP

By: */s/ Jordan Eth*
      Jordan Eth
      Jamie A. Levitt

Attorneys for Defendant
MARC CADIEUX