**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**
Salvatore J. Graziano (appearance *pro hac vice*)
(salvatore@blbglaw.com)
Preethi Krishnamurthy (appearance *pro hac vice*)
(preethi@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

**KESSLER TOPAZ MELTZER & CHECK, LLP**
Sharan Nirmul (appearance *pro hac vice*)
(snirmul@ktmc.com)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

Stacey M. Kaplan (Bar No. 241989)
(skaplan@ktmc.com) One Sansome Street,
Suite 1850 San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Lead Counsel for Lead Plaintiffs Norges Bank and Sjunde AP-Fonden and Additional Plaintiffs Asbestos Workers Philadelphia Welfare and Pension Fund, and Heat & Frost Insulators Local 12 Funds and the Proposed Class*

**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF CALIFORNIA**
**SAN JOSE DIVISION**

| | |
|---|---|
| IN RE SVB FINANCIAL GROUP SECURITIES LITIGATION | **STATUS REPORT REGARDING APPOINTMENT OF A SPECIAL MASTER**<br>Master File No. 5:23-cv-01097-NW |
| TIAA-CREF INVESTMENT MANAGEMENT, LLC, et al.,<br>Plaintiffs,<br>v.<br>GREGORY W. BECKER, et al.,<br>Defendants. | Case No. 5:24-cv-00478-NW |
| STEVEN J. BUCHANAN,<br>Plaintiff,<br>v.<br>GREGORY W. BECKER, et al.,<br>Defendants. | Case No. 5:24-cv-02684-NW |
| FEDERAL DEPOSIT INSURANCE CORPORATION AS RECEIVER FOR SILICON VALLEY BANK,<br>Plaintiff,<br>v.<br>GREGORY BECKER, et al.,<br>Defendants. | Case No. 5:25-cv-00569-NW |

Pursuant to the Court's direction at the August 13, 2026 Case Management Conference (the "August 13 Conference") and the Minute Entry entered by the Court that day (Dkt No. 365), the Parties to the above-referenced actions hereby submit this Status Report Regarding Appointment of a Special Master.

After extensive meeting and conferring, the Parties jointly propose that the Honorable Patrick J. Walsh (Ret.) be appointed as the Special Master in these actions. Judge Walsh formerly served as a Magistrate Judge in the United States District Court for the Central District of California from 2001 until 2020, including as its Chief Magistrate Judge from 2016 until 2020. Judge Walsh's curriculum vitae is attached as Exhibit A.

Unfortunately, the parties were unable to reach an agreement on the scope of the Special Master's authority. Accordingly, the parties set forth their respective positions below.

## I. Plaintiffs' Statement

As set forth in the Proposed Order attached as Exhibit B, the Securities Plaintiffs (the plaintiffs in Nos. 5:23-cv-01097-NW, 5:24-cv-02684-NW, and 5:24-cv-00478-NW, herein referred to as the "Securities Actions") propose that Judge Walsh's duties include the following as to the Securities Actions:

i. hearing and issuing orders or recommendations resolving disputes arising under Federal Rules of Civil Procedure 26 through 37 and 45, including disputes concerning the scope, relevance, and proportionality of requested discovery; interrogatory and request-for-admission responses; document requests; and the adequacy of searches, collections, and productions;

ii. hearing and issuing orders or recommendations resolving disputes concerning electronically stored information, including custodians, date ranges, search terms, technology-assisted review, and the form of production;

iii. hearing and issuing orders or recommendations resolving assertions of attorney-client privilege, work-product protection, or any other privilege or protection, including the sufficiency of privilege logs, challenges to specific log entries, and the conduct of *in camera* review of documents withheld or redacted on the basis of privilege;

iv. hearing and issuing orders or recommendations resolving disputes concerning the scheduling, sequencing, location, and duration of depositions;

v. hearing and issuing orders or recommendations resolving disputes concerning the conduct of depositions that arise during a deposition, which the Special Master shall endeavor to resolve by telephone or videoconference while the deposition is in progress;

vi. hearing and issuing orders or recommendations resolving disputes concerning subpoenas issued under Rule 45, including motions to quash, modify, or compel compliance, to the extent such disputes are properly before this Court;

vii. hearing and issuing orders or recommendations resolving disputes concerning the timing and form of expert disclosures and expert discovery under Rule 26(a)(2) and 26(b)(4), provided that the Special Master shall have no authority to determine the admissibility of any expert opinion;

viii. hearing and issuing orders or recommendations resolving disputes arising under the Stipulated Protective Orders entered in any of the Related Actions, including confidentiality designations;

ix. hearing and issuing orders or recommendations resolving the setting of interim deadlines for the completion of specific discovery tasks, provided that no such deadline shall extend beyond the fact or expert discovery cut-offs set by the Court;

x. hearing and issuing orders or recommendations resolving any other discovery disputes as the Parties may, by written stipulation, agree to submit to the Special Master;

xi. consulting with the parties (but not issuing formal recommendations) concerning the potential impact and implications of Judge Freeman's Findings of Fact and Conclusions of Law in *SVB Financial Trust v. Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank*, *N.A.,* No. 5:24-cv-01321-BLF (N.D. Cal.) (Dkt. No. 417) (the "FDIC Trial Order") for settlement and/or discovery common to the FDIC Action and Securities Actions; and

xii. assisting the Parties in scheduling mediation(s) and, if the Parties jointly request it, attending

the mediation(s).

As to Case No. 5:25-cv-00569-NW ("FDIC Action"), in which the Federal Deposit Insurance Corporation as Receiver of Silicon Valley Bank ("FDIC-R") is the plaintiff, the FDIC-R proposes for the reasons set forth by it below that the Special Master's duties include hearing and issuing orders or recommendations concerning:

xiii. any matter described above in items (i), (ii), (iii), (vi), (viii), or (ix) to the extent that the dispute, assertion of privilege, or setting of interim deadlines concerns discovery sought or to be produced in both the FDIC Action and one or more of the Securities Actions;

xiv. any matter described above in items (iv) or (v) to the extent that the deposition has been cross-noticed in both the FDIC Action and one or more of the Securities Actions; and

xv. the matters described above in items (x), (xi), and (xii).

**A. Securities Plaintiffs' Position**

In addition to the above, the Securities Plaintiffs understand that Defendants seek to have the Special Master address "all motions for class certification," "all motions for summary judgment," "all Daubert motions," and "all pretrial motions." *See* Exhibit C. The Securities Plaintiffs oppose Defendants' additional proposed scope of responsibilities for the Special Master for several reasons.

***First***, the scope of responsibilities in Exhibit B is consistent with the Court's guidance during the August 13 Conference. During the August 13 Conference, the Court stated that a Special Master could "help coordinate all of the related discovery" and allow the parties to "get an ear as soon as you need it and to be able to get quick responses" regarding discovery disputes. August 13 Conference Tr. 17:6-10. The Court also stated that the Special Master could "help to assess what the impact is ... of Judge Freeman's decision" in *SVB Financial Trust v. Federal Deposit Insurance Corporation, as Receiver for Silicon Valley Bank and Silicon Valley Bridge Bank, N.A.*, 5:24-cv-01321-BLF (N.D. Cal.), which was pending at the time of the August 13 Conference, but has since been issued. *Id.* at 17:14-15. The Court further suggested that the parties could use a Special Master "for settlement." *Id.* at 19:10-12. Finally, the Court stated that the Special Master could help the Court assess "how it might make sense to pace the discovery or the trials." *Id.* at 17:15-16.

Consistent with the Court's guidance at the August 13 Conference, the Proposed Order attached as Exhibit B includes all of these meaningful tasks, contemplating that the Special Master will, among other things: (i) oversee and coordinate discovery between the various SVB-related cases pending before Your Honor; (ii) resolve the many anticipated discovery disputes, including as to privilege, relevance, and burden; (iii) assess and consult with the Parties as to the potential implications of Judge Freeman's 200-page Trial Order for settlement and discovery common to the cases; and (iv) facilitate the Parties' scheduling of mediations, and if requested by the Parties, attend such mediations.

These significant and time-consuming assignments will more than occupy Magistrate Judge Walsh's time through, at least, the end of fact and expert discovery. Indeed, there are likely to be numerous discovery disputes in these cases over the next many months—including as the parties from the multiple actions depose over 30 fact and expert witnesses, pore through Defendants' voluminous privilege logs, address the privilege and other potential implications of the Executive Defendants' recent invocation of an advice-of-counsel defense, seek compliance with outstanding document requests, pursue additional "search terms" and document custodians, and much more.

***Second***, Defendants' proposal is vastly over-inclusive, including because it would permit the Special Master to address a wide range of substantive and case-dispositive motions—including on class certification, summary judgment, *Daubert* motions, and motions *in limine*. As discussed further below, in addition to being inconsistent with the Court's guidance at the August 13 Conference, Defendants' proposal, if adopted, would derail the case schedules and in any event be improper.

***Third***, Defendants' proposal, if adopted, would introduce significant delay and make it impossible for this Court to try any of these cases in 2027. As the Court noted at the August 13 Conference, "these cases are quite old," "everybody needs some closure in these cases," and the Court would "like to be trying at least one of these cases by September [2027]." *Id.* at 21:3-10. If the Special Master's remit includes resolving the parties' class certification, summary judgment, *Daubert* motions, motions *in limine*, or other dispositive or merits motions, these important and time-sensitive decisions would be potentially subject to multiple rounds of briefing—first, before the Special Master, and second, before Your Honor, who would be forced to resolve objections from either side to the Special Master's

recommendations. *See* Fed. R. Civ. P. 53(f) (requiring *de novo* review of objections to Special Master's recommended "findings of fact" and "conclusions of law").

Defendants' proposal would make any 2027 trial impossible. Under Defendants' proposal, objections to the Special Master's order, report, or recommendation would be filed within 21 days of the Special Master's ruling. Then, any party wishing to respond would have another 21 days to do so. And then, replies would be filed 14 days later. In other words, ***after*** the Special Master ruled on, for example, class certification, a second round of briefing lasting ***56 days*** would take place before this Court. This would introduce almost two months of delay while the Parties brief the same issues before Your Honor. That same process would unfold not only for class certification but also for summary judgment, *Daubert* motions, and motions *in limine*, and guarantee almost ***8 months*** of additional delay, derailing the Court's case schedules in these long-pending actions.

Recognizing this reality, courts and commentators have repeatedly cautioned that a broad special master remit introduces delay and inefficiency. *See* 9 Moore's Federal Practice – Civil § 53.03[b] ("Appointments of masters . . . increase occasions for delay. . . [and] may result in the commission of multiple judicial resources to the performance of the same tasks"); Elizabeth Chamblee Burch & Margaret S. Williams, *Judicial Adjuncts in Multidistrict Litigation*, 120 Colum. L. Rev. 2129 (2020) (finding in a study of 92 MDL proceedings that those "with special masters lasted 66% longer than those without"); *see also Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 570 (N.D. Cal. 2009) ("Even a special master would have to adjudicate all of the myriad issues. All would then be subject to relitigation before the district judge under Rule 53(f)."); *Hartford Fire Ins. Co. v. Progressive Corp.*, 2013 WL 12137765, at *1-2 (N.D. Ohio Oct. 9, 2013) ("Plaintiff argues that appointing a special master at this stage would only delay proceedings … due to additional briefing required for objections to the special master's report and recommendation … The court finds Plaintiff's arguments to be well-taken.").

***Fourth***, courts have repeatedly held that it is inappropriate for a special master to resolve substantive liability issues without the parties' consent. *See Cymbidium Restoration Tr. v. Am. Homeowner Pres. Tr. Series AHP Servicing*, 2024 WL 3598580, at *3 (W.D. Wash. July 31, 2024) (finding "request for a special master over [opposing party's] objection would violate Rule 53 and Article

III of the Constitution" because it would "refer 'meat-and-potatoes' [] liability issues to a special master"); *Castaneda v. Burger King Corp.*, 264 F.R.D. 557, 570 (N.D. Cal. 2009) ("The appointment of a special master to determine not merely damages but liability … would be an abdication of judicial responsibility."); *see also Sierra Club v. Clifford*, 257 F.3d 444, 447-49 (5th Cir. 2001) ("vacat[ing] the orders of reference, the orders adopting the special master's reports, and the final judgment" in the case where the reference included issuing reports and recommendations on "basic liability issues"); *Stauble v. Warrob, Inc.*, 977 F.2d 690, 696 (1st Cir. 1992) ("Nonconsensual reference of fundamental issues of liability to a master for adjudication is not consonant with either Rule 53 or Article III.").

***Fifth***, Defendants' proposal—which contemplates the Special Master would address the core substantive motions in the case, as well as the parties' many anticipated discovery disputes—would significantly increase the costs associated with the Special Master appointment and the litigation. While Securities Plaintiffs will, of course, pay their portion of those costs in the first instance, it is unavoidable that Defendants' proposed, broad remit would—if accepted—reduce the Class's ultimate recovery, as well as increase attorneys' fees by effectively doubling the amount of briefing on every substantive motion.

***Sixth***, Defendants propose that the Special Master's fact findings be subject only to "clear error review," rather than de novo review. The Federal Rules of Civil Procedure provide, however, that the "court must decide de novo all objections to findings of fact" absent stipulation by all parties to the contrary. Fed. R. Civ. P. 53(f)(3). No such stipulation exists here.

***Finally***, Defendants' proposed stipulation contemplates unlimited *ex parte* communications with the Court at any time. Defendants' proposal, however, runs counter to the "ordinary" and usual practices as contemplated by the Federal Rules. *See* Fed. R. Civ. P. 53 advisory committee notes ("Ex parte communications between a master and the court present troubling questions. Ordinarily the order should prohibit such communications"); *see also* 9 Moore's Federal Practice § 53.21 ("In most cases, *ex parte* communications between the master and the court … should be discouraged, if not prohibited"). Defendants have not proffered any reason, let alone a compelling reason, to depart from the default rule, whereas there is sound reason to avoid such departure. *See* Comm. Notes on R. 2003 Amend. (prohibiting

such communication "assur[es] that the parties know where authority is lodged at each step of the proceedings").

* * *

For these reasons, the Securities Plaintiffs respectfully submit that the scope of the Special Master's duties should be limited to the items identified in the Proposed Order attached as Exhibit B.

**B. FDIC-R's Position**

The FDIC-R consents to the Proposed Order attached as Exhibit B and joins the Securities Plaintiffs' objections listed above to the Defendants' proposed order. The FDIC-R asks the Court to enter the Proposed Order attached as Exhibit B for the reasons explained above by the Securities Plaintiffs and because this proposed order defines a proper set of roles and an efficient mandate for the Special Master in the FDIC-Action. That mandate should focus on crossover or common discovery issues between the FDIC Action and the Securities Actions.

In the FDIC Action, substantial discovery has occurred. Party document production is largely complete, and the parties to the FDIC Action already have taken twelve party depositions (which were cross noticed and taken in the case before Judge Freeman). In addition, Magistrate Judge Cousins (and the Court) have considered and ruled on discovery disputes that the parties to the FDIC Action have briefed and submitted, and there is a potential for further, related disputes on the same issues. These discovery issues are all unique to the FDIC Action, and because they already have been litigated and addressed, there would be no efficiency in having the Special Master address them anew or to consider related disputes that may arise in the future.

The same is true for legal issues. The FDIC Action and Securities Actions involve different sets of parties and many parties who are involved in only one of the two sets of cases (including the FDIC-R itself, the Securities Plaintiffs, five Individual Defendants, the Underwriter Defendants, and KPMG, all of whom appear in one but not both sets of cases). The actions also involve different claims (negligent and grossly negligent breaches of fiduciary duty in the FDIC Action and securities fraud and other related claims in the Securities Actions). So the issues that may arise on motions for summary judgment, *Daubert* motions, pretrial evidentiary motions, and in connection with Judge Freeman's recent decision

will necessarily differ between the FDIC Action and the Securities Actions. There is no need to coordinate a resolution of legal issues unique to the FDIC Action between all these cases, and no efficiency would be gained by having the Special Master address such questions before the Court does so. Separate briefing and recommendations by the Special Master on issues unique to the FDIC Action would only create delay and extra work.

On the other hand, there are and will be overlapping discovery issues that impact both the FDIC Action and the Securities Actions, particularly related to depositions, where the FDIC-R expects the Special Master will be of great assistance. For example, there are several party and third-party witnesses who will be deposed in both the FDIC Action and the Securities Actions. Counsel for the parties to all the actions have been negotiating with respect to scheduling, timing, and scope of these depositions, as well as a limited number of other discovery issues that may impact both the FDIC Action and one or more of the Securities Actions. To the extent there are disputes over this common discovery between all the actions, a Special Master's expertise would be especially valuable in helping the parties to resolve these issues in an efficient and organized manner.

For these reasons, the FDIC-R asks the Court to enter the Proposed Order attached as Exhibit B. Section 2(b) of that order appropriately defines the responsibilities of the Special Master for the FDIC Action in terms of common discovery disputes that may impact both the FDIC Action and one or more of the Securities Actions—rather than a broader set of discovery or legal issues that are unique to the FDIC Action.

## II. Defendants' Statement

Defendants agreed to the Special Master that Plaintiffs proposed, but the Parties have not agreed on the scope of duties for the Special Master. The central dispute between the Parties' competing proposals concerns the scope of the Special Master's participation in this action. Defendants propose a broader and more active role, consistent with their understanding of the Court's guidance at the August 13, 2026 Case Management Conference. A copy of Defendants' Proposed Order is attached hereto as Exhibit C.

Defendants' proposal contemplates providing the Special Master authority (subject to the Court's

consideration and approval) to (1) decide discovery disputes, (2) issue reports and recommendations for class certification motions, summary judgment motions, *Daubert* motions, and all other pretrial motions, and (3) assist the Parties and the Court in establishing an efficient schedule and case management approach in the context of the multiple complex related cases at issue. Plaintiffs' proposal, by contrast, confines the Special Master's role exclusively to discovery matters (as to which the Parties have mostly resolved amongst themselves) and expressly *excludes* authority over class certification, dispositive motions, *Daubert* motions, case scheduling, as well as the sequencing and pacing of the related actions.

Defendants' proposal is the one that best aligns with the Court's guidance during the August 13 conference. At that conference, the Court was clear that it envisioned the Special Master serving in more than a discovery-management capacity. The Court told the Parties it could "imagine [the Special Master] being useful beyond just simply managing discovery and the coordination of discovery to hopefully make it not only more economical, but just streamlined." ECF 370 at 17:19-22. Further, the Court noted that "so many creative things that can be done to help move things along," including "strategiz[ing] around the Court hearing some motions maybe out of order out of the normal course of things, advancing maybe, you know, expert, you know, some Daubert-related things or whatever it is, because it would help the parties to figure out what would make sense." *Id.* at 25:8-13. In addition, the Court noted its heavy caseload, stating the Court "could digest having some thoughtful ideas that are distilled from all of you and some recommendations from somebody who [has] had a chance to do that, but I just don't have the bandwidth to take that kind of a deep dive here," and further noted that a Magistrate Judge could not fill this role because "their purview would really be very much on sort of the discovery side of the house, but not some of these other pieces." *Id.* at 25:15-23.

Moreover, limiting the Special Master's role to deciding discovery issues in these cases does not make sense as there have been no discovery disputes to date in the securities case and minimal issues raised with the Court to date in the FDIC Action. For that additional reason, Defendants' proposal more closely aligns with what the Court indicated it was looking for in the role of a Special Master, particularly given the size and complexity of this case and the related actions.

Indeed, the securities cases involve dozens of alleged misrepresentations spanning over three

years, allegedly made by multiple, differently-situated defendants at different times; billions in alleged damages; distinct causes of action; and proposed classes that are sprawling. The issues are complex and unique for each defendant, and require a material amount of time to analyze and address. In the coming months alone, the Court will be receiving updated briefing on class certification, and under Fed. R. Civ. P. 23 will conduct a "rigorous analysis" of the elements. A Special Master is likely to benefit the Court by doing the first deep dive and preparing a report and recommendation that the Court is free to adopt, reject or modify. The same is true for the significant briefing that will come further down the road, including summary judgment, *Daubert* and pre-trial motions.[1]

Plaintiffs' proposal, on the other hand, restricts the Special Master's scope to discovery disputes and then affirmatively carves out authority over case scheduling, dispositive motions, class certification, *Daubert* motions, and the sequencing, coordination, consolidation, or pacing of the related cases. Plaintiffs' draft excludes virtually every function other than discovery, and, in Defendants' view, undermines the objectives of the Court. If only discovery needed to be addressed, that is likely something that the assigned Magistrate Judge could handle given the limited discovery disputes that have arisen.

In summary, Defendants' proposal provides the Special Master with the tools to do what the Court asked: coordinate efficiently and provide the kind of thoughtful, comprehensive recommendations the Court indicated it needs but may lack sufficient bandwidth to develop on its own. Accordingly, Defendants request that the Court adopt the scope of authority in Defendants' proposal.

---

[1] The same factors militate in favor of conveying identical authority to the special master in the FDIC Action. Unless the current schedule is amended, it leaves little margin for delay. The FDIC Action will enter expert discovery in four months and dispositive-motion practice in seven. By the close of dispositive and *Daubert* briefing, the Court will have just over three months to resolve all motions before trial. Granting the Special Master the authority Defendants have suggested will mitigate against potential scheduling delays and is within the authority authorized under Federal Rule of Civil Procedure 53. *See Cordoza v. Pac. States Steel Corp.*, 320 F.3d 989, 995 (9th Cir. 2003).

Dated: September 17, 2026

Respectfully submitted,

**BERNSTEIN LITOWITZ BERGER & GROSSMANN LLP**

*/s/ Salvatore J. Graziano*
Salvatore J. Graziano (appearance *pro hac vice*)
(salvatore@blbglaw.com)
Preethi Krishnamurthy (appearance *pro hac vice*)
(preethi@blbglaw.com)
1251 Avenue of the Americas
New York, NY 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444

- and-

Jonathan D. Uslaner (Bar No. 256898)
jonathanu@blbglaw.com
2121 Avenue of the Stars, Suite 2575
Los Angeles, CA 90067
Telephone: (310) 819-3470

**KESSLER TOPAZ MELTZER & CHECK, LLP**

*/s/ Sharan Nirmul*
Sharan Nirmul (appearance *pro hac vice*)
(snirmul@ktmc.com)
Jamie M. McCall (appearance *pro hac vice*)
(jmccall@ktmc.com)
Nathaniel C. Simon (appearance *pro hac vice*)
(nsimon@ktmc.com)
280 King of Prussia Road
Radnor, PA 19087
Telephone: (610) 667-7706
Facsimile: (610) 667-7056

-and-

Stacey M. Kaplan (Bar No. 241989)
(skaplan@ktmc.com)
One Sansome Street, Suite 1850
San Francisco, CA 94104
Telephone: (415) 400-3000
Facsimile: (415) 400-3001

*Lead Counsel for Lead Plaintiffs Norges Bank and Sjunde AP-Fonden and Additional Plaintiffs Asbestos Workers Philadelphia Welfare and Pension Fund, and Heat & Frost Insulators Local 12 Funds and the Proposed Class*

**ROBBINS GELLER RUDMAN & DOWD LLP**

*/s/ Luke O. Brooks*
Darren J. Robbins
Luke O. Brooks
Erika L. Oliver
Ting H. Liu
Jack Abbey Gephart
655 West Broadway, Suite 1900
San Diego, CA 92101-8498
Telephone: 619-231-1058
Facsimile: 619-231-7423

- and-

**ROBBINS GELLER RUDMAN & DOWD LLP**
Shawn A. Williams
Post Montgomery Center
One Montgomery Street, Suite 1800
San Francisco, CA 94104
Telephone: 415-288-4545
Facsimile: 415-288-4534

*Counsel for Plaintiffs TIAA-CREF Investment Management, LLC and related entities*

**SCOTT + SCOTT ATTORNEYS AT LAW**

*/s/ John T. Jasnoch*
John T. Jasnoch
Mollie Chadwick
600 W. Broadway, Suite 3300
San Diego, CA 92101
Telephone: 619-233-4565

*Counsel for Steven J. Buchanan*

**ARENTFOX SCHIFF LLP**

*/s/ Lawrence H. Heftman*
Lawrence H. Heftman (*pro hac vice*)
David C. Giles (*pro hac vice*)
Michael K. Molzberger (*pro hac vice*)
233 S. Wacker Dr., Suite 7100
Chicago, IL 60606
Telephone: 312-258-5500
lawrence.heftman@afslaw.com
david.giles@afslaw.com
michael.molzberger@afslaw.com

*Counsel for the Federal Deposit Insurance Corporation as Receiver for Silicon Valley Bank*

**GIBSON, DUNN & CRUTCHER LLP**

*/s/ Daniel M. Ketani*
Barry H. Berke (pro hac vice)
(bberke@gibsondunn.com)

Daniel M. Ketani (pro hac vice)
(dketani@gibsondunn.com)
200 Park Avenue
New York, NY 10166
Telephone: (212) 351-4000
Facsimile: (212) 351-4035

Michael D. Celio (mcelio@gibsondunn.com)
George B. Adams, III
(gadams@gibsondunn.com)
310 University Avenue
Palo Alto, CA 94301
Telephone: (650) 849-5300

*Counsel for Defendant Daniel J. Beck*

**WILMER CUTLER PICKERING HALE AND DORR LLP**

*/s/ Jessica L. Lewis*
Jessica L. Lewis (SBN 302467)
(jessica.lewis@wilmerhale.com)
2600 El Camino Real Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

Michael G. Bongiorno (pro hac vice)
(michael.bongiorno@wilmerhale.com)
250 Greenwich Street, 45th floor
New York, NY 10007
Telephone: (212) 230-8800

Timothy J. Perla (pro hac vice)
(timothy.perla@wilmerhale.com)
Erika M. Schutzman (pro hac vice)
(erika.schutzman@wilmerhale.com)
60 State Street
Boston, MA 02109
Telephone: (617) 526-6000

*Counsel for Defendants Roger F. Dunbar, Beverly Kay Matthews, Eric A. Benhamou, Elizabeth Burr, Richard D. Daniels, Alison Davis, Joel P. Friedman, Jeffrey N. Maggioncalda, Mary J. Miller, Kate D. Mitchell, Garen K. Staglin*

**WILMER CUTLER PICKERING HALE AND DORR LLP**

*/s/ Christopher W. Johnstone*
Christopher W. Johnstone
(chris.johnstone@wilmerhale.com)
2600 El Camino Real, Suite 400
Palo Alto, CA 94306
Telephone: (650) 858-6000

Peter G. Neiman (pro hac vice)
(peter.neiman@wilmerhale.com)
Jessica N. Djilani (pro hac vice)
(jessica.djilani@wilmerhale.com)
7 World Trade Center
New York, NY 10007
Telephone: (628) 230-8800

*Counsel for Defendant Karen Hon*

**ORRICK HERRINGTON & SUTCLIFFE LLP**

*/s/ James N. Kramer*
James N. Kramer (jkramer@orrick.com)
Olivia Rosen (orosen@orrick.com)

The Orrick Building
405 Howard Street
San Francisco, CA 94105
Telephone: (415) 773-5700

Kevin M. Askew (kaskew@orrick.com)
355 S. Grand Ave., Ste. 2700
Los Angeles, CA 90071
Telephone: (213) 629-2020

*Counsel for Defendant Greg W. Becker*

**KATTEN MUCHIN ROSENMAN LLP**

*/s/ Richard H. Zelichov*
Richard H. Zelichov
(richard.zelichov@katten.com)
Bruce G. Vanyo (bruce@katten.com)
Paul S. Yong (paul.yong@katten.com)
2121 Avenue of the Stars, Suite 1100
Los Angeles, CA 90067
Telephone: (310) 788-4400

**KATTEN MUCHIN ROSENMAN LLP**
Bruce G. Vanyo
(bruce@katten.com)
Paul S. Yong
(paul.yong@katten.com)
2029 Century Park East, Suite 2600
Los Angeles, CA 90067
Telephone: (310) 788-4400

*Counsel for Defendant John S. Clendening*

**ALLEN OVERY SHEARMAN STERLING US LLP**

*/s/ Daniel C. Lewis*
Adam S. Hakki (appearance *pro hac vice*)
Daniel C. Lewis (appearance *pro have vice*)
Joshua T. Ebersole (appearance *pro hac vice*)
599 Lexington Avenue
New York, NY 10022
Telephone: +1.212.848.4000
adam.hakki@aoshearman.com
daniel.lewis@aoshearman.com
joshua.ebersole@aoshearman.com

Daniel H. Gold (appearance *pro hac vice*)
2601 Olive Street, 17th Floor
Dallas, TX 75201
Telephone: +1.214.271.5777
dan.gold@aoshearman.com

Noah A. Brumfield (SBN 203653)
1460 El Camino Real, 2nd Floor, Menlo Park
Silicon Valley, CA 94025
Telephone: +1.202.683.3847
noah.brumfield@aoshearman.com

*Counsel for Defendants Goldman Sachs & Co. LLC, BofA Securities, Inc., Morgan Stanley & Co. LLC, and Keefe, Bruyette & Woods, Inc.*

**KING & SPALDING LLP**

*/s/ Lisa R. Bugni*
Lisa R. Bugni (lbugni@kslaw.com)
50 California Street, Suite 3300
San Francisco, CA 94111
Telephone: (415) 318-1200

Richard T. Marooney (rmarooney@kslaw.com)
J. Emmett Murphy (jemurphy@kslaw.com)
Kevin J. O'Brien (kobrien@kslaw.com)
Kenneth Fowler (kfowler@kslaw.com)
1290 Avenue of the Americas, 14th Floor
New York, NY 10104
Telephone: (212) 556-2100

*Counsel for Defendant KPMG LLP*

**LATHAM & WATKINS LLP**

*/s/ Christopher L. Garcia*
Christopher L. Garcia, admitted pro hac vice
(christopher.garcia@lw.com)
Raquel Kellert, admitted pro hac vice
(raquel.kellert@lw.com)
Matthew P. Valenti, admitted pro hac vice
(matthew.valenti@lw.com)
1271 Avenue of the Americas
New York, NY 10020
Tel: (212) 906-1200
Fax: (212) 751-4864

ALEXANDER WYMAN
(alex.wyman@lw.com)
355 S. Grand Avenue
Ste 100
Los Angeles, CA 90071
Tel: (213) 485-1234

*Counsel for Defendant Michael Kruse*

**MORRISON & FOERSTER LLP**

*/s/ Jamie A. Levitt*
Jordan Eth
(jeth@mofo.com)
425 Market Street
San Francisco, CA 94105-2482
Tel: (415) 268-7126
Fax: (415) 268-7522

Jamie A. Levitt, admitted pro hac vice
(jlevitt@mofo.com)
250 West 55th Street
New York, NY 10019
Tel: (212) 468-8000
Fax: (212) 468-7900

*Counsel for Defendant Marc Cadieux*

**HOGAN LOVELLS US LLP**

*/s/ Megan R. Nishikawa*
Megan R. Nishikawa
(megan.nishikawa@hoganlovells.com)
4 Embarcadero Center, Suite 3500
San Francisco, CA 94111
Tel: (415) 374-2300

Peter G. Spivack
(peter.spivack@hoganlovells.com)
555 13th Street, NW
Washington, DC 20004
Tel: (202) 637-5631

*Counsel for Defendant Michael Descheneaux*

**SKADDEN, ARPS, SLATE, MEAGHER & FLOM LLP**

*/s/ Mark R.S. Foster*
Mark R.S. Foster
(mark.foster@skadden.com)
525 University Avenue
Palo Alto, CA 94301
Tel: (650) 470-4580

David Meister, admitted pro hac vice
(david.meister@skadden.com)
One Manhattan West
New York, NY 10001-8602
Tel: (212) 735-2100

Anita B. Bandy, admitted pro hac vice
(anita.bandy@skadden.com)
1440 New York Avenue, N.W.
Washington, DC 20005
Tel: (202) 371-7570
Fax: (202) 393-5760

Abigail Elizabeth Davis, admitted pro hac vice
(abigail.sheehan@skadden.com)
1000 Louisiana Street, Suite 6800
Houston, TX 77002
Tel: (713) 655-5120

Counsel for Defendant Laura Izurieta